FLETCHER *et al.*, executors, *vs.* COLLIER, guardian, *et al.*

1. The writ of error will not be dismissed because, in authenticating the bill of exceptions, the clerk certifies it to be the original, instead of certifying it to be the *true* original. It is better, however, to certify in the exact language of the statute.
2. The brief of evidence sent up in the record having upon it an entry, duly signed by the presiding judge, approving both the brief itself and the grounds of the motion for a new trial, and the bill of exceptions containing, in *extenso*, a copy of the motion for new trial, one of the grounds of which motion refers to the evidence, and concludes thus, "a copy of which, both oral and written, is hereto attached, and which movant prays may be taken as a part of his motion," it is sufficiently apparent that the brief of evidence was attached to the motion, and, hence, the clerk's entry of filing, found now on the motion, is to be construed as reaching to and including the brief; for, if the motion was filed, and the brief was attached to it, the brief was filed also. Motion to dismiss the writ of error for want of such authentication of the filing of the brief of evidence, and such reference thereto in the bill of exceptions, as fitted the brief to come up as a part of the record, under section 4253 of the Code, denied.

3. A party to the contract or cause of action on trial, is competent to testify to the time when the other party died, and to many other facts.

4. Depositions being offered in evidence, containing answers to several interrogatories, and a sweeping objection to the whole being made, on the ground that the witness was incompetent, and the witness being clearly competent as to some of the answers, the objection was properly overruled    The party objecting should have restricted the objection to those parts of the deposition (pointing them out) to which the alleged incompetency applied.

5. The proceeds of a contract of insurance on the life of a husband and father, payable at his death to the widow for the use of herself and dependent children, vested in the widow, partly as her own, and partly in trust for such children.  Their respective shares would not necessarily be equal.  There might be inequality, as among the children themselves, resting on their comparative ages, health, strength, etc.. and, as between the widow and any given child, resting on the like circumstances and others.

6. The widow having collected the fund and delivered it in lump to her father, to be managed by him for her and the children, he was her agent.  She was his principal, partly as an individual, and partly as trustee for the children.  He was accountable to her alone, unless in combination with her he committed some wrong prejudicial to the rights of the children.  His acceptance of the agency, and the faithful discharge of its duties, would be no wrong, though the event proved unfortunate.  He having died without settling with her touching his transactions, a verdict in favor of the children, on a bill filed by them against his legal representatives, to which bill she was not a party, was, under the evidence adduced at the trial, contrary to law.  To the case made by the evidence she was an indispensable party, and should have been the sole party plaintiff unless she refused to sue, in which event the facts requisite to entitle the beneficiaries of a trust to sue in their own behalf should have been alleged, and she should have been a co-defendant, not only because of her title as trustee, and of her relation as principal to the deceased agent, but because of her individual interest in the account to be taken with the agent's representatives.

Practice in the Supreme Court.  Witness.  Evidence. Interrogatories.  Practice in the Superior Court.  Insurance.  Principal and agent.  Trusts.  Parties.  Before Judge HALL.  Monroe Superior Court.  March Term, 1878.

Collier, as guardian for two, and as next friend for the three remaining minor children of Johnston, deceased, filed

his bill against Fletcher and Ogletree, as executors of Ogletree, deceased, and Mrs. Johnston, making, in substance, this case :

Johnston died on September 6, 1868; his life was insured in the Masonic Life Insurance Company of Macon, in the sum of $4,000.00, for the benefit of his wife and children. In the month of November after his death, said company paid to his widow $4,000.00 in settlement of the insurance, five-sixths of which constituted a trust fund in her hands for the benefit of said minors. Mrs. Johnston, confiding in her father, Ogletree, deceased, who was also co-administrator on the estate of her husband, paid said money over to him, and he accepted it promising to use the same for the benefit of said minors. Mrs. Johnston was then insolvent. She and her father used this money in their own business, loaning it to insolvent persons, etc., etc. Her father died testate on January 5, 1876, appointing the defendants his executors. During his life he never settled for said trust fund, nor used it, or any part thereof, for the benefit of said minors, nor have his executors since his death. Said fund constitutes an equitable lien chargeable on the estates of Ogletree, deceased, and of Mrs. Johnston, superior to all other liens, and as complainant is without a remedy at law, waiving all discovery, he prays as follows: 1st. A settlement of said trust fund, with interest. 2d. That two-sixths thereof he paid to complainant as trustee for two of said minors, and the balance paid into court, and that some proper person be appointed trustee for the other three minors, to take charge thereof and manage the same.

Fletcher, executor, answered, denying that his testator received said money from Mrs. Johnston, promising to use it for the benefit of said minors, or that she was insolvent, etc. Says that it may be true that Mrs. Johnston did, at different times, call upon her father, the testator, for advice and assistance in the management of such money, and that he may have, as the agent of his said daughter, but in no other way, loaned out and managed the fund turned over to him ; that therefore his estate, if liable at all, is liable for

his acts as agent, to Mrs. Johnston, who, as natural guardian of her children, had the right to manage and control their proportion of the fund for their benefit. Denies that testator loaned out any portion of said fund to insolvent persons without taking security. The estate of Johnston proved to be insolvent, and is indebted to the estate of testator $2,000. Charges that —— acres of land were purchased by Mrs. Johnston in the year ——, for which was paid $1,600.00 out of the fund received from the insurance company, which place has been held by her and her children until the present time, and from the products of which said minors have been supported. Asserts that defendant, as executor, has turned over to Mrs. Johnston notes representing portions of said fund. amounting to $915.00; that Mrs. Johnston, the testator assisting her as her agent, purchased provisions, farming utensils, etc., for her use and that of her children, amounting to $200.00; that testator, as administrator of Johnston, paid tuition bills and other expenses amounting to $500.00 cr other large sum, when said estate was insolvent and largely indebted to testator, and defendant asks that said sum may be taken into account in estimating what sum, if any, is due by defendants to said minors.

Before the filing of the answer, Mrs. Johnston, on motion of counsel for complainants, was stricken as a party defendant from the bill.

The evidence disclosed that Johnston, deceased, was insured under the following certificate:

"No. 967.            GEORGIA MASONIC MUTUAL LIFE INS. CO.,
                    MACON, GA., March 18, 1868.

"This is to certify that P. E. Johnston, master mason, and a member of Holt Lodge 174, Georgia, has paid the sum of six dollars, and is thereby constituted a member of the Georgia Masonic Mutual Life Ins. Co., and is entitled to all the benefits of said association, upon his paying $1.10 in ten days after receiving notice of the death of any member thereof.
    [Signed]                GEO. S. OBEAR, *President.*
                        J. W. BURKE, *Sec'y and Treas.*"

That on December 7, 1868, Mrs. Johnston received from the secretary and treasurer of said company $2,842.00 in full for the amount due on the above certificate. That this

company issued no regular policies, but only certificates as the one above set forth, and upon the death of any member, as required by the laws of the company, the amount due was paid to his widow for herself and dependent children.

Complainant offered to read the deposition of Mrs. Johnston to the following effect:

"P. E. Johnston was my husband. He died nine years ago the sixth of last September. His life was insured in the Georgia Masonic Life Insurance Company at the time of his death, from which I received $2842.00. His life was insured for the benefit of his wife and children. I gave the money to my father to manage for myself and children. He received it for that purpose. I turned over to him the whole amount, but do not know what he did with it. Never had any conversation with him after turning it over, as to what he did with it. I do not know whether myself and children received any of the money from him afterwards or not.

"My husband left five minor children, (naming them and their ages.) My father administered on his estate. My father died January 5, 1876. The insurance money was collected in December of the year of my husband's death.

"I received and receipted for the money. No one else could receive it for me. I simply turned it over to my father to manage for myself and children, as he thought best. I did not give it to him as a part of my husband's estate, or as a separate estate. I did not know anything about how it had to be managed. I do not know how much of the fund was expended for our support, or that any of it was so expended. We were supported by my father, but whether out of my husband's estate, or this fund, I do not know. I have no idea how much has been expended for my children since the reception of the insurance money. My father made all the trades and payments for us until his death."

Defendants objected to this deposition because Mrs. Johnston was originally a party to the cause, and her interest was in direct conflict with that of the estate of testator. The objection was overruled.

The remainder of the evidence is unnecessary to an understanding of the decision.

The jury found for the complainants $1,300.00. The defendants moved for a new trial upon the following amongst other grounds:

1. Because the court erred in overruling the objection to the deposition of Mrs. Johnston.

2. Because the verdict was contrary to law and evidence. The motion was overruled, and defendants excepted.

When the case was called in this court, a motion was made by counsel for defendants in error to dismiss, which is sufficiently reported in the first two head-notes.

T. B. CABANISS; A. D. HAMMOND; H. C. PEEPLES, for plaintiffs in error, cited, on competency of Mrs. Johnston, Code, §3854; 37 *Ga.*, 118; 38 *Ib.*, 106; 45 *Ib.*, 472, 511; 48 *Ib.*, 584; 49 *Ib.*, 122; 52 *Ib.*, 315; 42 *Ib.*, 120; 44 *Ib.*, 46; 55 *Ib.*, 187; 60 *Ib.*, 535, 583.

BERNER & TURNER, for defendants, cited, on competency of Mrs. Johnston, Code, §3854; 45 *Ga.*, 147.

BLECKLEY, Justice.

1. "Such transcript, together with the original bill of exceptions, the clerk shall transmit, together with a certificate that the same is the true original bill of exceptions, and a true and complete transcript of the record," etc. Code, §4262. This direction is very plain, and the clerk ought to have complied with it as it stands. There can be no doubt that it is always better to certify in the exact language of the statute. But there is really no substantial difference between the original bill of exceptions, and the true original bill of exceptions. They are in fact one and the same. The clerk's certificate assures us that we have the original. Is is possible for us to believe it to be the original, and yet hesitate about its being the true original? What other original can there be but the true. one?

2. The next question, on the motion to dismiss the writ of error, has two branches; first, does the clerk's entry of filing, now found on the motion for a new trial, apply to the brief of evidence, as well as to the motion for a new trial? and, secondly, is there, in the bill of exceptions, a sufficient reference to the brief evidence, to dispense with embodying the brief in the bill of exceptions, and to qualify it for coming up to this court as a part of the record, under section 4253 of the Code? As to the clerk's entry of filing, though it is upon the motion for a new trial, there is evidence that the motion and the brief were connected together when the motion was prepared and presented in the court below; for the bill of exceptions sets out a copy of the motion, and one of the grounds of the motion refers to the evidence, and concludes with this language: "a copy of which, both oral and written, is hereto attached, and which movant prays may be taken as a part of his motion." Now, if the brief of evidence was attached to the motion for a new trial, as this recital affirms, the whole constituted one single document, and the clerk's entry of filing, placed upon the back of it, applied equally to the whole. The entry happened to rest directly upon that part of the package which embodied the motion for a new trial, but the rest of the package, embracing the brief of evidence, was no less within its scope and purpose. When one instrument of writing is attached to another at the time of the filing, the clerk's entry of filing, unless expressly restricted by its own terms to one, ought to be considered as extending to and comprehending both. It will be observed that the evidence on which we are relying to establish the fact that the two papers were connected together, is a recital found in the motion for a new trial, which recital appears in the motion as contained in the transcript of the record, and also as copied at large in the bill of exceptions. But how, it will be inquired, do we know the recital is true? By the express approval of the judge. On the brief of evidence, the judge, over his own signature, has approved both the brief itself,

and the grounds of the motion for a new trial, one of which grounds contains the recital which we are considering. When we put the clerk's entry, the recital and the judge's approval together, we can have no reasonable doubt that the brief of evidence, as well as the motion for a new trial, was duly filed, and that the entry of the clerk was intended to apply to the one no less than to the other. There is no question that the judge's approval of the brief of evidence was sufficient to satisfy section 4253 of the Code ; and the evidence of filing being, as we have just seen, also sufficient, we are next to determine whether the bill of exceptions refers to the brief so as to satisfy the same section of the Code in *that* respect. The section does not require the reference to be made in any particular terms, but only that it be made. As already stated, the bill of exceptions contains a full copy of the motion for a new trial, and one of the grounds of that motion distinctly refers to the evidence, and recites that a copy of it is attached, leave being asked to treat such copy as a part of the motion. The copy of the evidence here mentioned is, as we have already seen, the brief which the judge approved, and which was filed together with the motion. The motion being set out in the bill of exceptions, the words of the motion become a part of the bill of exceptions, and it is thus that we are enabled to hold that the bill of exceptions refers to the brief of the evidence. The motion to dismiss the writ of error is denied.

3. Though Mrs. Johnston was a party to the contract or cause of action on trial, she was a competent witness to prove any fact which did not come to her knowledge by reason of that relationship, nor involve any direct reference to it. She was certainly competent to testify when her father died, since the time of his death was not known to her by reason of her being a party to the contract or cause of action, nor did it bear directly on the making or the breach of any contract, or on the creation of any cause of action. It was a fact which might have been known to any stranger as well as to her.

4. As Mrs. Johnston was competent to prove at least one fact answered to in her depositions, a sweeping objection to all her answers, upon the ground that she was incompetent as a witness because her father was dead, could not be sustained. This or that testimony should have been objected to specifically ; and if that course had been taken, we may presume that the court would have ruled out such of it as she was incompetent to give. The objection which was made did not require the court below, nor does it require this court, to apply any principle of selection. It is enough that the depositions contained some admissible evidence— some evidence which the witness was competent to give on the trial.

5. The act of the general assembly under which the contract of insurance was made, was read to us by counsel in the argument. From the act, and the evidence adduced at the trial, we are satisfied that the proceeds of the contract were payable to the widow of the insured for her use and the use of their dependent children ; and that when paid, the money vested in her, partly as her own, and partly in trust for such children. Taking into view the object and purpose of the Masonic system of insurance, we think the respective shares of the widow and children might be either equal or unequal, according to circumstances. Equality would not necessarily be the rule of division or appropria tion. Among the children themselves, there might be inequality, resting on their comparative ages, health, strength, etc. So, between the widow and any given child, inequality might rest on the like circumstances, and perhaps others.

6. Having ruled that the title to the whole fund is in the widow, some of it in trust for the dependent children, the balance in her own right, it follows that she was the proper person to sue for it and collect it, if her father died chargeable with it, or with any part of it. Her father took it, at her request, to manage it ; and was consequently her agent, not the agent of the children. He was accountable to her alone, unless in combination with her he commit-

ted some wrong prejudicial to the children's rights. Surely it was not wrong to accept the agency. She had a right to manage the fund either in person or through an agent. How can there be a recovery unless she is made a party to the bill? Our line of thought on this point is sufficiently sketched in the sixth head-note. As she was not a party to the cause on trial, the verdict of the jury was contrary to law.

Judgment reversed.