## FALVEY vs. ADAMSON.

1. Where an attachment against a debtor, issued *ex parte*, on the ground that he had fraudulently transferred his property, and, upon application by the defendant and a hearing before the judge, the attachment was dismissed, this was such an adjudication as could be excepted to and brought to this court for review.

2. Where an attachment issued against a debtor on the ground of the fraudulent transfer of his property, the fact that a claim had been interposed by a third party, and equitable issues had been tendered therein by the plaintiff for the purpose of redeeming and subjecting property alleged to have been transferred as security, would not prevent the defendant in attachment from seeking to have it dismissed, as provided by section 3299 of the Code.

(*a*.) Where a plaintiff had sued out such an attachment, and was proceeding against the defendant and his property, and the property levied on was claimed by a third party, the defendant could proceed to have the attachment removed, although he did not lay claim to the property under levy.

(*b*.) The right of the plaintiff to subrogate himself to the defendant's position for the purpose of redeeming and subjecting the property, could not be passed upon on a summary motion to dismiss the attachment.

3. On an application to dismiss an attachment granted *ex parte* on the ground of a fraudulent transfer of property by the debtor, the decision of the judge on disputed facts may be reviewed; but in making such judgment, he is allowed the exercise of a sound discretion similar to that which he has in cases of injunction; and such discretion will not be controlled unless it plainly appears to have been abused.

January 21, 1885.

Practice in Supreme Court. Debtor and Creditor. Attachment. Practice in Superior Court. Before Judge HAMMOND. Fulton Superior Court. March Term, 1884.

Falvey sued out an attachment against Z. W. Adamson, on the ground that the defendant was making, or had made and was about consummating, a fraudulent transfer of certain property to his father, C. Q. Adamson, for the purpose of defeating his creditors. An attachment issued *ex parte*, and was levied on the property, and a claim was interposed by the father. Subsequently the defendant

moved to dissolve it, disclaiming owning the property, but denying the allegations of fraud. Plaintiff objected to the hearing of this motion, because defendant disclaimed any interest in the property, and because the claim case was pending, and certain equitable issues had been filed therein, as stated in the second division of the decision. The evidence was voluminous and conflicting. The presiding judge dismissed the attachment, and plaintiff excepted.

On the call of the case in the Supreme Court, a motion was made to dismiss it, on the ground that there was no final adjudication excepted to.

J. H. LUMPKIN, for plaintiff in error.

MYNATT & HOWELL, for defendant.

HALL, Justice.

1. The motion to dismiss this writ of error must be denied. The decision complained of was necessarily final as to the attachment in question; it took it out of the court below. Code, §4250. The act of 1873, Code, §3301, under which this proceeding was had, provides that the granting or refusing an attachment by the judge, under that article of the Code, may be excepted to, and carried to the Supreme Court, as was practiced in applications for injunctions prior to the 28th of October, 1870. That is, they should be brought to this court, as was provided in section 4250 of the Code, and cognate section, existing prior to that time, when the legislature provided what is known as a fast bill of exceptions for bringing to this court decisions upon applications for injunctions. Code, §§3212–3215. This bill of exceptions complies strictly with the requirements of law existing previous to that time.

2. The attachment was issued upon the *ex parte* showing of the plaintiff, and was levied upon property which was claimed by a third party. The claim was returned, and while pending in the superior court, the defendant took

measures, in accordance with the provisions of the law applicable to the case (Code, §3299), to have the attachment removed; and upon this application, after a careful and full hearing of the evidence introduced by both parties, the court removed the attachment. It is now insisted that this was error, because it is said that this action carried with it the claim case in which certain special issues had been formed, among others one which set up that the sale from the defendant in attachment of the property levied on to the claimant amounted to a security only for the payment of certain liabilities due from the former to the latter; that the value of the property exceeded the amount of this indebtedness; and that the plaintiff had a right to pay off this incumbrance and apply the excess which might arise from the sale thereof to the extinguishment of his claim; that he offered to pay the claim of the claimant, in order that this surplus might be thus applied; that by dismissing the attachment, he was deprived of the right to try this issue. It is further insisted that the defendant could take steps to remove the attachment only in case it had been levied on his property, and that in this instance, the levy was upon property to which he disclaimed title.

It is to be remarked that all these proceedings took place before the term of the court to which the attachment and the claim to the property levied on were returned. By the terms of the act of 1873, the attachment could issue only where the defendant had sold, or conveyed or concealed his property, or threatened, or made preparations to do so, which property was liable to the payment of his debts, and for the purpose of avoiding the payment of the same. The act of 1877 makes fraudulent liens on property subject to the provisions of this law. Code, §§3297, 3297(a). When application is made for this process, the judge may issue it either without calling on the defendant, or after he has called upon him to show cause why it should not be granted, and if issued before cause is shown, then the defendant may take steps to have it removed. Whenever

it is granted, by the terms of this act, it is to issue in the usual form, and to be directed as usual, and to be executed as existing laws provided, and it is subject to traverse, replevy, demurrer and other modes of defence, as prescribed by such laws. Code, §§3298, 3299, 3300.

We are not aware of any practice or principle which would deprive the defendant of his right to have this attachment removed, by reason of the interposition of a claim to the property levied on; the defendant is not a party to the issues made upon the claim; he has no power to interpose it or to prevent its interposition; he is not heard as a party on the trial. In this anomalous proceeding affecting his rights of property, he is, according to our practice, compelled to occupy a neutral position; but he is certainly a party to the process which seeks to bring the property to sale, and all his rights of defence to that are expressly reserved by the words of this statute. The claimant has rights that he does not possess, and he has some of which the claimant cannot avail himself.

It is insisted here that he can make no effort to remove the process unless "his property has," in the language of the statute, "been attached without a hearing," as thereinbefore provided, and that in this instance he disclaims title to the property on which it has been levied. This objection comes with bad grace from the plaintiff, who is not in a situation to accept this disclaimer, without at the same time abandoning the pursuit of his rights to subject the property. He necessarily insists, in the inception and prosecution of the suit, that the property levied on is subject to his debt, although the defendant has fraudulently conveyed it for the purpose of avoiding the payment of the same. The statute in question evidently contemplates that the plaintiff shall have power to reach property so situated, and in that connection it provides a mode and a tribunal by which the defendant may summarily traverse the ground upon which the attachment issued. To say that he could not rid himself of the writ when the

Falvey *vs.* Adamson.

property was claimed, would, in a vast majority of instances, be to deprive him of the defence which the statute gives him. Had this been the purpose of the legislature, a very few words would have sufficed to express it, but in the absence of such an expression, it would be going too far, according to the strict rules of construction that universally obtain in applying such statutes, to infer such an exclusion from a single word, the meaning of which does not clearly import it, but rather its opposite. Courts have no power to enlarge or restrict the provisions of statutes; this is the province of the legislature; if, under the pretext of interpretation, we should make an exception to the act, we would usurp its functions. The plaintiff complains that, by dismissing his attachment, he is deprived of the right of subrogating himself for the defendant and exercising the right of redeeming the property in the hands of the claimant for the payment of certain specified debts of the defendant assumed by him. This, however, is an issue which the judge has no right to determine in a manner so summary, even if the purpose of the conveyance be such as the plaintiff claims that it is.

3. The plaintiff urges that the judge's determination of this issue is not " conclusive " upon him, and that it is subject to review by this court, irrespective of the rule that obtains in the exercise of a sound discretion in granting or continuing injunctions, or in ordering or refusing new trials in cases of conflicting evidence. We are of a different opinion. It is true that the act of 1873, which is embodied in §3301 of the Code, does contain certain words omitted from that section; but still, the section gives the exact sense of the enactment, dispensing only with certain tautological expressions. The Code declares "that the decision of the judge granting or refusing an attachment under the provisions of this article may be excepted to and carried to the Supreme Court, as was practiced in applications for injunctions prior to 28th October, 1870." The corresponding part of the statute is in these

v 73-33

words: "A refusal to grant such attachment shall not be conclusive on the party applying, but he may except to the decision and carry the same before the Supreme Court for review, as applications for injunction were carried prior to the act of 1870. So also the granting of such attachments may be excepted to, as refusals to grant injunctions prior to said time." It is, therefore, evident that the word "conclusive" is here used in a qualified and limited sense, as it was theretofore used in reference to the granting or refusal of injunctions. It is so far conclusive only as to secure the right of having the decision reviewed upon bill of exceptions and writ of error. In this respect, attachments sought under this act are placed upon the same footing as injunctions; and when the case is brought here on writ of error, it will be determined in accordance with the rules that obtain in cases of injunction. There is an express provision of the Code, §3220, " that the granting and continuing of injunctions must always rest in the sound discretion of the judge, according to the circumstances of each case," and this is the rule of decision which is prescribed in cases of attachment upon the ground involved in this case. It is almost needless to remark that we never interfere with the exercise of his discretion in any case, unless it plainly appears that it has been abused. The testimony leaves it doubtful, to say the least, whether the transaction in question was *bona fide* or fraudulent; the preponderance is rather in favor of its fairness. This is the conclusion at which the judge trying the issue, both as court and jury, arrived, after a full and, as it seems to us, most careful investigation of the proofs before him. We cannot say that the suspicious circumstances brought out by the plaintiff's evidence were not satisfactorily explained by the facts which the defendant adduced. Had a jury trying this issue reached this conclusion, and had the judge presiding at its trial been content to let the verdict stand, we could not, without glaring inconsistency, and without reversing all our decisions, interfere with his judgment.

Although this attachment is at an end, the plaintiff is not without his remedy. His rights, if he has any, are not concluded by this interlocutory judgment. The evidence received after the judgment was made up has not been considered by us, as doubtless it was not by the circuit court judge in making his opinion.

Judgment affirmed.