## BRIGHTWELL *et al. vs.* JORDAN.

1. Where corn was purchased by an overseer, acting under an administrator, for the benefit of the plantation of the estate which he was conducting, and a note was given to the vendor, signed by the administrator, on a bill to marshal the assets of the estate, filed after the death of such administrator, the vendor was a competent witness to testify as to the character of his claim, the overseer being still in life.

2. A land-owner died in June, 1865.  On October 2, administration was granted on his estate.  Shortly thereafter, the administrator died, and on February 5th, 1866, a successor was appointed.  Subsequently it was discovered that the deceased had left a will, which was probated, and on June 4th, 1866, an administrator, with the will annexed, was appointed.  The estate was not in a condition to be wound up, and litigation was pending in regard thereto.  During the year of the testator's death and the year following, an agent and overseer conducted his plantation, which constituted the bulk of the estate.  About the first of May, 1863, he contracted for corn for the use of the estate, and it was consumed in making the crop of that year.  It was hauled off with the wagons and teams of the estate, and, at that time, the estate was represented

as having no corn. The administrator gave a note for the purchase price of the corn, signed in his representative capacity. Subsequently a bill to marshal the assets was filed:

*Held,* that such a contract was within the reason and spirit of the first and second sections of the act of March 12, 1866, and is a charge upon the estate, under the peculiar circumstances of the case, being an exception to the rule which now obtains in determining the extent to which contracts made by such trustees will bind the estates they represent.

(*a.*) This ruling does not conflict with that in 61 *Ga.*, 661.

February 24, 1885.

Witness. Administrators and Executors. Contracts. Before Judge BOWER. Dougherty Superior Court. October Term, 1884.

Reported in the decision.

D. H. POPE; HAMILTON McWHORTER, for plaintiffs in error.

W. E. Smith; D. A. VASON, for defendant.

HALL, Justice.

On the last trial of this case, several facts having an important bearing upon the issues involved were disclosed, which were not made to appear when it was before this court at the February term, 1884.*

The testator, George O. Dawson, died in the month of June, 1865; administration on this estate was granted to Lucien W. Dawson on the 2d of October of the same year. Between that time and the month of December following, Lucien W. Dawson died, leaving the estate wholly unadministered, never having caused an appraisement to be made, or having filed any schedule of its effects, or made any return whatever. At the December term of the court of ordinary, Seabrook filed a petition praying letters of administration *de bonis non,* and on the 5th day of Feb-

---

*See Jordan *vs.* Brown *et al.*, 73 *Ga.*, 495.

ruary, 1866, he was appointed and qualified as such administrator. Thereafter the will of the deceased was brought to light and admitted to probate and record. When this was done, the administration committed to Seabrook seems to have been revoked, and he was, on the 4th of June, 1866, appointed administrator with the will annexed. A copy of the will is sent up with the record, but, as it has no material bearing on the questions presented, it is not necessary to notice more particularly its contents. During the year of testator's death, and the year following, one Frierson, as agent and overseer, conducted and managed his plantation in Dougherty county, which constituted the bulk of his estate. About the first of May, 1866, Jordan, the defendant in error, made a contract with Frierson, the overseer, to deliver to him, for the use of the estate, 850 bushels of corn; this corn was hauled off with the wagons and teams belonging to the estate, and was consumed in making the crop of that year; at the time it was delivered, the estate was represented as having no corn. Jordan never saw Seabrook, but received from him a note of hand for the price of the corn, which was signed by him as " administrator on the estate of George O. Dawson." Seabrook died, and after his death the complainant in this bill succeeded him as administrator of Dawson's estate. Frierson, with whom Jordan made this contract, was in life at the last trial of this bill. The land being levied on by a creditor who had obtained a judgment against the estate, and being involved in litigation which commenced in testator's life, this bill was filed to enjoin that levy and to marshal the assets of the estate, which had become insolvent, and to pay them out to the creditors according to their rank and priority, and they were called upon to litigate among themselves as to these matters. Jordan set up in his answer that his claim was contracted in the administration of the estate, and was a part of the expenses of the same, and, therefore, entitled to priority over the claims of other creditors with whom he

was called upon to interplead. He was permitted, on the trial, to testify as to the character of his claim, over the objection of the other contestants, because Seabrook, the other party to the contract or cause of action, was dead. The judge, to whose decision, as to law and facts, these issues were submitted, in rendering his decree, awarded to Jordan's debt the priority claimed for it, and ordered it paid out of the assets of the estate next after paying the court costs of the bill. To this portion of the decree his co-defendants, the other claimants of the fund, excepted as they did also to the decision holding Jordan a competent witness. Two questions are thus. presented for our determination.

1. We are of opinion that there was no error in holding Jordan a competent witness to testify to the facts he did. The party with whom he conducted the entire negotiation, from which his debt sprang, was the agent, overseer and manager of the estate, as was proved, not only by his own representations, but by another witness, and was then in life; and this made Jordan competent to testify according to principles established by numerous decisions of the court. Code, §3854, sub-sec. 1, and citations, especially 36 *Ga.*, 107; 37 *Id.*, 568; 41 *Id.*, 123; 59 *Id.*, 342.

2. It was insisted that, at the time this contract was made with Jordan, the administrator could not, under the law, bind the estate by the same; how that may be at the present time, it is needless to decide. In addition to the embarrassments consequent on the frequent changes of administration, there being three in less than a year from the death of testator, and the serious litigation pending over it at his death, it will be remembered that all these events occurred in a short time after the close of the late war, when the business operations of the country were so deranged, and when all matters pertaining to the management of estates were in such confusion and disorder that the legislature was compelled to intervene, not only in behalf of such trustees, but also for the relief of the courts to

whom they were answerable, and at its session of 1865 and 1866, no less than eight acts were passed to effect these essential objects. Among the number was that approved the 12th of March, 1866 (acts, p. 87), which by its first section placed contracts, made in good faith before its passage, by administrators, etc., for labor or service for the benefit of the estate, upon the same footing, and with the same effect as contracts made by authority of law, declaring that they should not be void for want of authority to make them, and legalizing and confirming them. The second section of the act empowered executors and administrators thereafter to make such contracts for labor, for the benefit of the estates represented by them, " upon such terms as they might deem best," and declared them, when made in good faith, to be a charge upon and binding on the estate, whenever they should be approved by the ordinary. Code, §2546. If the words of this act do not expressly approve contracts made for provisions to sustain and keep the laborers thus employed, its spirit and evident meaning and intent would seem to have this effect. Why employ them, if they are not to be kept in a condition to perform service? The very discretion given as to terms would seem to include the further authority to make supplies a part of the price of the labor. The power to do an act implies the use of the means necessary to its accomplishment. That these hands were hired and on the place when Seabrook took its management as administrator is quite evident from testimony in this cause. It would be no strained presumption to assume that he was carrying out the contract of his predecessor in the administration, if not of the testator himself, by the agreement that he made, through his agent, with Jordan. He is bound to carry out the executory contracts of the deceased as far as possible. Code, §2547. He may use his discretion in continuing the business of the estate until the expiration of the current year; and up to the time of its sale or distribution, he must manage and dispose of its property for its best interest.

*Ib.*, 2545. The powers given and the duties imposed by these two sections do not appear to be derived from any statute, but would seem to result from the very nature of his obligation, and to have been recognized by the general law applicable to the subject. They are probably of common law, and not of statutory origin.

In *Lawton & Willingham et al. vs. Fish, ex'x.*, 51 *Ga.*, 650, an executrix was allowed to retain out of the estate the amount of losses which occurred in continuing and carrying on the plantation, where the hands to cultivate it had been employed by her testator. Dawson's plantation was carried on with the hands found upon it, when this administrator took charge; it was conducted by the labor employed prior to the act of March 12th, 1866; it was thus lawfully conducted by virtue of the first section of that act, which was then of force, but which has since expired by its own limitation; such contracts for labor did not require the sanction of the ordinary, as we have seen, to impart validity to them; this section of the act declared them valid, and as we think, included others which provided the means to make the labor efficient and productive. In addition to the embarrassments common to all, and prevailing at the time, the sale or distribution of this estate was retarded, if not prevented, by the lawsuit in which it was involved, which continued to the filing of the present bill, and even afterwards. With this cloud hanging over the title, no one would have purchased it; and certainly it was not in a condition to be paid out to creditors or legatees; the difficulties of renting it to others were equally great, and to suffer it to lie idle and to be unproductive would not have been managing and disposing of it for the best interest of those entitled to it. It is true that in the case of *Johnson vs. Parnell*, 61 *Ga.*, 661, this court held, where the intestate died in January, 1869, and his business was profitably conducted by the administrator to the end of that year, and the estate was then ready for distribution, there was no au-

thority to continue it for succeeding years, under the second section of the act of 12th March, 1866, and that the administrator would render himself individually liable for losses occasioned by carrying on the plantation during the latter years. The features distinguishing the case under consideration from that are quite marked, and are widely different; indeed, one may be said to be the very reverse of the other. Here the testator died in the middle of the year, and no representation was had on the estate until near its close, and that representation terminated before its end, and another was not had until after the commencement of the next year, which also terminated in the middle of that year, when the first proper administration was had after the discovery and probate of the will; but above all, the estate was never in a condition to be paid out to creditors and legatees; there were insuperable barriers to making a final disposition of it or to utilizing it o'herwise than by having it managed by the representative. Besides, this contract to assist in carrying out which the corn was furnished by Jordan, was made prior to the act of March, 1866, and is one of those validated by first section of that act.

When this case was before the court at the February term, 1884, the necessary effect of our decision was that this debt of Jordan was a debt due from the estate. We now decide directly what was then only inferentially declared, that it is a charge upon that estate; and this conclusion is reached on account of the peculiar circumstances of the case, and is to be considered as an exception to the rule which now obtains in determining the extent to which contracts made by such trustees will bind the estate, they represent. It can bind the estate only when it is to be deemed a legitimate part of the expenses of the administration. This was the view taken by the court in the case of *Lawton & Willingham vs. Fish, ut sup.* The rank assigned in the distribution of the assets

among creditors was, therefore, proper under the law, and the exception to this part of the decree was not well founded.

Judgment affirmed.