ALLEN *v.* BROWN *et al.*, administrators.

1. Where a defendant's property is levied on and properly advertised, and he voluntarily brings it to the place of sale and stands by and sees it sold, without giving notice or raising any objection, he is estopped from recovering the property or its value from the purchaser, though the officer as such had no legal authority to sell.

(*a*) While it may have been error to exclude the whole of the plaintiff's interrogatories when a part thereof was admissible, yet had such legal part been admitted, it would not have aided the plaintiff, for while he says therein that he did not consent to the sale, he does not say that he objected to it. If defendants expect to make their non-consent to the seizure and sale of their property available in future actions, they must make it known at the proper time and place, so as to put purchasers on notice.

2. The property in question being personal property, and the record not showing how many years elapsed after the sale in 1873 before this suit was brought, it was not inferable, on the trial in 1888, from proof of the defendant's possession in 1873, that he was in possession in 1888; and the plaintiff not showing by his testimony that the defendant was in possession of the property at the time the action was brought, a nonsuit was properly awarded. 79 *Ga.* 354, and 43 *Ga.* 323, distinguished.

April 17, 1889.

Levy and sale. Estoppel. Officers. Evidence. Interrogatories. Executions. Possession. Nonsuit. Before Judge RICHARD H. CLARK. Douglas superior court. July adjourned term, 1888.

Allen sued Whitley in trover for a certain mule. It seems that Whitley died pending the action, and that his administrators were made parties. Upon the trial, plaintiff introduced two promissory notes, each dated Jan. 25th, 1873, and payable on or by Nov. 1st, 1873, each for $80.00, given by him to Whitley, and each reciting that it was for purchase money of the mule. Also an instrument of writing, which was signed by plaintiff, reciting the purchase of the mule and the giv-

v 83-11

ing of the notes, and that the mule was bought to enable plaintiff to make a crop; and containing an agreement that Whitley should have a lien on the mule, on the crops of plaintiff to be made in 1873, and on cows, wagon, etc., to be enforced when the notes fell due if he should neglect to pay them or either of them. This instrument was also dated Jan. 25th, 1873, and bore a credit of $37.00, Oct. 30th, 1873. Also an affidavit made by Whitley on November 25th, 1873, claiming a special lien on the mule, crops, cows, etc., the property of Allen "for supplies to enable him to make his crop for the year 1873"; and an execution issued thereon by the magistrate before whom the affidavit was made, reciting that Whitley had made oath before him, "this day," that Allen was indebted to him (Whitley) $123.71 on two promissory notes, and that the debt was contracted in 1873 for means to enable Allen to make his crop, for which [he] granted Whitley a lien on the "above named property," and that said debt is now due and unpaid, for which Whitley claims a lien on the property of Allen both personal and real, "and which has this day been adjudged against the said Allen in chambers," etc. The execution bore date Nov. 25th 1873, and had upon it these entries: an entry of levy on the mule, wagon, seed-cotton, etc., dated Nov. 25th, 1873; of sale under the levy, the mule bringing $60.00 and other property $61.00 and of $9.25 costs, without date; of receipt by Whitley to the constable who made the levy, for $93.92, dated Dec. 16th, 1873; of receipt by Whitley of $17.00, Dec. 29th, 1873; and of "above levy dismissed by order of the plaintiff this Dec. 16th, 1873, R. Shirley L. C."; and "(satisfied)."

The oral testimony introduced by plaintiff tended to show as follows: The mule, wagon, etc. were sold by Shirley at constable's sale as the property of Allen, in December, 1873. The mule was bought and taken

away by Whitley. The mule brought $40.00 or $60.00, and is worth $100.00. The sale was made after advertisement. Plaintiff bought the mule from Whitley and paid him $57.00 in money and a note on G. W. Land for $16.00, also a bale of cotton and a lot of cotton-seed, and the money that the wagon and a yoke of steers brought, which was about $25 or $30. There were about twenty-five or thirty bushels of cotton-seed, worth fifteen cents per bushel, and an average bale of cotton would weigh 450 pounds, worth in 1873 twelve to fifteen cents per pound. One of the witnesses for plaintiff testified that witness heard plaintiff say to the constable the mule belonged to Whitley, and handed the bridle to the constable and said if Whitley chose to sell his own mule he could do so. Two of plaintiff's witnesses testified that they were present when plaintiff came to the place of constable's sale with the mule, and did not hear him make any such statement.

Plaintiff offered his own interrogatories, which were rejected on the ground that Whitley was dead. Part of this testimony offered was as to transactions and conversations between the plaintiff and Shirley and the magistrate, and part as to transactions and conversations between plaintiff and Whitley. The judge states, in the bill of exceptions, that the interrogatories were offered as a whole and rejected as a whole.

A nonsuit was granted, and the plaintiff excepted. He also assigned as error the refusal of the court to admit in evidence various portions of his interrogatories. Part of this excluded testimony was to the effect that the sale of the mule was without the consent of plaintiff; that he had notified the constable that the property was homesteaded, and the constable said he need not produce it at the place of sale; and that on the day of court plaintiff rode the mule to the court-ground, and the constable sold it that day without his consent.

The other part was to the effect that plaintiff told Whitley the mule was homestead property, and Whitley threatened to take plaintiff and the mule with a writ, and the magistrate ordered the mule sold, and it was sold then and there.

T. W. LATHAM and R. A. MASSEY, for plaintiff.

J. S. JAMES, for defendants.

SIMMONS, Justice.

The facts of this case will be found in the official report. Under the facts thus reported, it was not error in the trial judge to grant the nonsuit complained of. Allen, the plaintiff, voluntarily carried the mule to the place of sale, after having been told by the constable that he need not bring it. Before the sale, he told the constable that it was Whitley's mule, and that if Whitley chose to sell his own mule he could do so. The mule was sold by the constable, and it does not appear from this record that Allen objected to the sale. He gave no notice at the sale that the mule had been set apart to him as an exemption under the exemption and homestead laws. Some time after the sale (how long after the record does not show), he brought this suit in trover to recover the mule on the ground that the execution under which it was sold was void.

1. We think that where a defendant's property is levied on and properly advertised, as was done in this case, and the defendant voluntarily brings that property to the place of sale and stands by and sees it sold, without giving notice or raising any objection, he is estopped from recovering the property or its value from the purchaser, though the officer, as such, had no legal authority to sell. *Reichert* v. *Voss*, 78 *Ga.* 54.

But it is argued by counsel for the plaintiff in error that if the court had not erred in excluding the interrogatories of the plaintiff, the interrogatories would

have shown that the plaintiff did not consent to the sale of the mule. While the court may have erred, under the rule laid down in *Fletcher* v. *Collier*, 61 *Ga.* 653, in excluding the whole of these interrogatories when a part thereof was admissible, we have read the interrogatories and do not think they would have aided him if the legal part had been admitted; for while the plaintiff says therein that he did not consent to the sale, he does not say that he objected to it. If he did not consent to it at the time, it was his duty then and there to make known his objection, so as to put the purchaser upon notice. He could not stand by and see his property sold under an invalid execution without giving notice thereof, and afterwards say that in his own mind he did not consent; and that is what his evidence amounts to in these interrogatories. It is no doubt true that in his own mind he did not consent to have his property sold; we apprehend that few defendants consent to the seizure and sale of their property by the officers of the law. If, however, they expect to make this non-consent available in future actions, they must make it known at the proper time and place, so as to put purchasers on notice.

2. We think the court was right in granting this nonsuit for another reason; and that is, that the plaintiff did not show by his testimony that the defendant was in possession of the mule at the time the action was brought, as required by §3028 of the code. It is true that in the case of *Robson* v. *Rawlings*, 79 *Ga.* 354, this court held that where the property was in the possession of the defendant a few years before the bringing of the action, there would be some degree of presumption that the possession had not changed, and that he still had possession; and the same principle was laid down in *Mercier* v. *Mercier*, 43 *Ga.* 323; but we do not think that these cases control this case, under the facts

disclosed by this record.   In the case in 79 *Ga.* the action was brought within two or three years after the defendant had possession of the property, but in this case the record fails to disclose when this action was brought.   It shows that the sale occurred in 1873, and that the trial of this case was in 1888, but there is no date in the record indicating when the suit was commenced.   The only date we can find tending to throw any light on this is the date to one of the pleas of the defendant, which was sworn to in 1886.   So from the record we cannot tell how many years elapsed after the sale before suit was brought.   This being personal property, we do not think that on the trial in 1888, proof of the possession of the defendant in 1873 would show that the defendant was in the possession thereof in 1888, or that the jury could so infer.   For these reasons, we affirm the judgment granting this nonsuit.

*Judgment affirmed.*