HASLETT, sheriff, *et al. v.* RODGERS *et al.*

1. As the issuance of an attachment by a judge of the superior court under the fraudulent debtor's act embodied in section 4543 et seq. of the Civil Code involves a preliminary determination by him that the attachment should issue, it is a judicial and not a ministerial act.

2. When a petition for such an attachment alleges as a foundation for its issuance that the debtor has made a conveyance of certain property, describing it, to other parties, with the intent to hinder, delay, and defraud creditors, and further attacks such conveyance as being otherwise illegal, the sheriff, by a levy of the attachment upon the goods described in the petition, does not thereby become a trespasser, although the conveyance thus attacked may be valid in law. He is therefore not liable in an action for damages in consequence of such levy, in a suit by the transferees of such goods, who claim to have bought the same in good faith before the attachment was issued.

3. In the trial of an action by such claimants of the property against the sheriff and the plaintiffs in attachment, it was error to strike a plea to the jurisdiction, filed by the plaintiffs in attachment, setting up the nature of the attachment proceeding, and alleging that they were non-residents of the county where the suit was brought. It was also error to refuse a nonsuit upon the motion of defendants' counsel, after the close of plain-tiffs' evidence, when the above facts were disclosed.

Argued March 22, — Decided April 20, 1899.

Action for damages. Before Judge Winn. City court of Gwinnett. April 2, 1898.

*N. L. Hutchins Jr.*, and *Alexander & Victor Smith*, for plaintiffs in error.

*T. M. Peeples*, *W. W. Haden*, and *H. M. Patty*, contra.

Lewis, J. It appears from the record in this case, that the plaintiffs in error were mercantile creditors of Mrs. C. C. Rodgers, who was, through her husband as her agent, engaged in the business of merchandising, having a store in Atlanta, Ga., and also one in Lawrenceville, in Gwinnett county, Ga., and that the plaintiffs were all residents of the city of Atlanta, where their debtor also resided. Mrs. Rodgers had executed a mortgage upon her stock of goods in Atlanta in favor of certain of her creditors, and also made what purported to be a bill of sale conveying her merchandise in Lawrenceville to her two stepsons, sons of her husband, who were then minors, the consideration of the conveyance being, besides the assumption of some small debts by the two stepsons, an alleged indebtedness due them by Mrs. Rodgers of some $5,000 or $6,000, this indebtedness being partly for their money, which she claimed to have borrowed from her husband as their guardian, and partly for services rendered by them as clerks in the store. Plaintiffs brought their petition against Mrs. Rodgers before the judge of the superior court of Fulton county, for an attachment under what is known as the fraudulent debtor's act, charging in the petition that this conveyance by Mrs. Rodgers to her two stepsons was intended to hinder, delay, and defraud creditors, and therefore was void; and that it was also invalid for the further reason that it was nothing more than an assignment, and the assignor had not conformed to the law on the sub-

ject of making such conveyances. The insolvency of the defendant was alleged, and it was also claimed that the transferees of the goods from her had no other property. Upon hearing these petitions and the affidavits in support thereof, the judge of the superior court issued an attachment on each one of the same, which was placed in the hands of the sheriff of Gwinnett county by the plaintiffs' attorneys, and by him was levied on the stock of goods described in the petitions. A few days after this levy, other creditors of Mrs. Rodgers filed their equitable petition in Fulton superior court, to which these attaching creditors, Mrs. Rodgers, and her two stepsons were made parties defendant. An order was granted by the judge upon that petition, appointing a receiver to take charge of all the assets of Mrs. Rodgers, including the merchandise levied on by the sheriff, and directing the sheriff to deliver the goods in his custody to the receiver, which was accordingly done. These goods were finally sold by the receiver under an order of the judge of the court where the equitable petition was pending, and the proceeds of the sale passed into the hands of the receiver to abide the final determination of that cause. While this matter was pending in Fulton superior court, the two stepsons, John and James H. Rodgers, one of whom had arrived at the age of majority and the other suing by his father, John Rodgers, as next friend, brought suit in the city court of Gwinnett county against the sheriff and all the attaching creditors, claiming $10,000 damages on account of the joint trespass committed by the defendants in levying on and seizing the stock of goods in Lawrenceville. To this action a demurrer was filed, which was overruled, and subsequently a plea to the jurisdiction was filed, which was likewise stricken. After plaintiffs' evidence had closed, the defendants moved for a nonsuit. This motion was also overruled, and at the conclusion of the trial the jury returned a verdict for the plaintiffs for $3,700 damages against all the defendants. A motion for a new trial was made by the defendants on divers grounds, all of which were overruled; and error is assigned in the bill of exceptions, on this judgment, and on the judgment overruling the demurrer and the plea to the jurisdiction.

1. The provisions of the act of 1873, known as the fraudulent debtor's act and embodied in sections 4543 et seq. of the Civil Code, are entirely different from the law regulating the issuing of attachments in other cases. A debtor renders himself liable to attachment under that act whenever he sells or conveys or conceals his property liable for the payment of his debts, for the purpose of avoiding the payment of the same, or whenever he threatens or prepares so to do. When such petition is presented to the judge of the superior court for an attachment under this act, he may either grant the attachment, or before granting the same may appoint a day on which he will hear the petitioner and the party against whom the attachment is prayed, as to the propriety of granting the same. If satisfied upon such hearing that the attachment should not issue, he shall not grant it; but if satisfied the same should issue, he shall grant it. It is further provided in the act, that if the party whose property has been attached without a hearing desires to do so, he may apply to the judge, stating fully and distinctly the grounds of his defense, showing why the attachment should not have been issued or should be removed, and the judge shall then appoint a time and place for hearing both parties, plaintiff and defendant, providing for due notice to *all parties interested,* allowing them full opportunity to sustain their respective cases, as in application for injunction, and may then, upon a review of the law and the facts of the case, make such order in the premises as is consistent with justice, either totally or partially removing such attachment, or wholly or in part retaining the same, or disposing of the same in some manner which would be equitable and just to all parties. As was stated by Justice Blandford in the case of *Gray* v. *Neill,* 86 *Ga.* 191, in discussing the powers of the judge in such matters, "A proceeding under this section of the code is in its nature similar to a proceeding in equity quia timet." We think it quite apparent from the terms of the act itself, that when a judge acts upon the petition and the evidence accompanying the same, presented by creditors seeking an attachment on account of violations of the provisions of this law by their debtor, he acts in a judicial and not in a ministerial capacity, whether his

judgment be rendered with or without a hearing. He adjudges the plaintiff's case, and has the power either to refuse or grant his prayer. The direction he gives the matter is just as much an adjudication touching the rights of the parties and the questions submitted to him as would be an order granting or refusing a prayer for an interlocutory injunction in a cause in equity. In fact it is quite manifest that the legislature intended by the provisions of this act to obviate the necessity of resorting to a court of equity for the purposes of an injunction or a receiver, and especially for the purpose of testing the validity of conveyances made by insolvent debtors. It was accordingly held in the case of *Haralson* v. *Newton*, 63 *Ga.* 163, that "A pretended sale by a debtor, for the purpose of avoiding his creditors, does not render the interposition of a court of equity necessary, especially where discovery is waived. Attachment will lie under Code [of 1873], § 3297." To the same effect see *Comer* v. *Coates*, 69 *Ga.* 491; *Coates* v. *Allen*, 71 *Ga.* 787; *Stephens* v. *Whitehead*, 75 *Ga.* 297. This court has not only recognized the ample relief given by this fraudulent debtor's act touching all fraudulent conveyances or liens created by the debtor on his property, but by the decisions cited has actually invited creditors to seek this relief when they wish such transactions investigated by the courts, and since the passage of that act has declined to open the doors of a court of equity to them for such a purpose.

When the judge grants an order directing the attachment to issue, this order becomes a judicial act; and the issuing of the attachment by the clerk is merely ministerial. In this case, however, it seems the judge himself issued the attachments on the petitions and affidavits in support thereof. This renders the act of the judge issuing the attachment judicial and not ministerial. *Loeb* v. *Smith*, 78 *Ga.* 504.

But it is obvious that the benefits intended by the act and the purposes for which it was passed could never be accomplished unless it was contemplated that the identical property alleged to have been fraudulently conveyed should be seized under the attachment by the officer in whose hands it was placed for execution. In the case of *Falvey* v. *Adamson*, 73 *Ga.* 493,

it appeared that an attachment was sued out against a debtor on the ground that he was making, or had made and was about to consummate, a fraudulent transfer of his property to his father for the purpose of defeating his creditors, and that an attachment was levied on the property and·a claim interposed by the father.    In the opinion delivered by Justice Hall, on page 496, in speaking of the effect and purposes of this statute, he says:. "The statute in question evidently contemplates that the plaintiff shall have power to reach property so situated, and in that connection it provides a mode and a tribunal by which the defendant may summarily traverse the ground upon which the attachment issued."    Again, in the case of *Manheim* v. *Claflin,.* 81 *Ga.* 134, the following quotation is taken from the opinion of Chief Justice Bleckley: "As to the goods in another store,. those not included in the mortgages and which were sold fraudulently by Manheim, the debtor, they were subject to attachment. under section 3297 of the code.    The statute embraced in that. section was passed for just such a case, a case in which the creditors have no judgment and no lien by contract, and the bill suggests no obstacle to the use of the attachment remedy." We conclude, therefore, that when such an attachment is issued by the judge of the superior court, or when he grants an order for it to issue, his act is not only judicial, but it bears with it the special mandate to levy upon the particular property which the creditor is seeking to subject and which he alleges to have been fraudulently conveyed to another person.

2. If we have given above a proper construction of such an exercise of the judicial power vested in the judge of a superior court by the General Assembly, then it necessarily follows·that the sheriff can not be guilty of wrong· or an act of trespass for obeying the mandate of the court, it matters not how valid may be the conveyance attacked.    There is a vast difference between attachments of this sort and those that issue in ordinary cases, generally against all the property of a debtor.    When a fi. fa. issues upon a general judgment, or an attachment issues in ordinary cases, the officer is simply commanded to· levy and seize generally property of the defendant, and when he acts he does so at his peril; and if he seizes property of a

person other than the defendant, and thereby causes injury to an innocent party, he and all parties acting with him in procur- ing such a seizure are liable as joint trespassers. The attach- ment that issues under the fraudulent debtor's act is of a dual nature. It proceeds generally against all the property of a de- fendant, and when the sheriff levies on property other than that described in the petition he does so at his peril; but when he seizes that specified in the proceedings, he is protected by the mandate of a judgment of court. We think, therefore, that as to such property this attachment is analogous to a mort- gage fi. fa., or to any other process of court that directs a seizure of specific property. In such cases the officer has no discre- tion but to execute the process, and whilst he holds possession legally thereunder he is not liable to be sued either for trespass or in trover by the true owner. *Wallace* v. *Holly,* 13 *Ga.* 389; *Chipstead* v. *Porter,* 63 *Ga.* 220. If we are correct in the above conclusions, it necessarily follows that there was no cause of action in this suit against the sheriff, and he being the only resident of the county where the suit was pending, an absence of a cause of action against him of course deprives the court of any jurisdiction over the remaining defendants.

3. It is contended, however, by counsel for defendants in error, that there was no error in striking the plea to the juris- diction, as it set up matters that had been adjudicated against the defendants when their demurrer was overruled, and that the exceptions to the demurrer in the record are not in such shape as to be subject to review by this court. It is not neces- sary for us to determine whether under the facts presented by the record we can review the exceptions taken to the judgment overruling the demurrer. It is a sufficient reply to the conten- tion of counsel, that in their action for damages the character of the process levied upon the goods they claimed was not set forth in their petition, and therefore could not have constituted a ground for demurrer; hence the plea to the jurisdiction set up new facts and presented a new issue, upon which the de- fendants were entitled to introduce testimony, and which if true established the want of jurisdiction in the court to try the case. The judge therefore erred in striking the plea to the ju-

risdiction. We think he also erred in overruling the motion to nonsuit the case after the plaintiffs had closed their testimony and the facts above stated had been developed. We do not mean to say that an action would not lie against attaching creditors proceeding under the fraudulent debtor's act, for a malicious prosecution or an abuse of civil process. We question very much, however, the power of any other court to entertain such an action as has been instituted in this case, before any final disposition has been made in the attachment proceedings, and the more especially in a case where the property in the hands of the attaching officer has, by an order of a court of competent jurisdiction, at the instance of other creditors of the defendant, been placed in the hands of a receiver appointed in a case to which all persons in interest are parties and in which an issue is directly made touching the validity of the conveyance which was the foundation of the action against these plaintiffs in error.

There are other interesting and important questions of law involved in the grounds of error assigned in the motion for a new trial, but it is unnecessary to consider them, as the principles of law announced in the headnotes control the case.

*Judgment reversed. All the Justices concurring.*