### 16543. MITCHELL & CO. *v.* ATLANTIC COAST LINE RAILROAD CO.

It not appearing that the evidence, with all reasonable deductions and inferences therefrom, demanded a verdict, it was error to direct a verdict for the defendant.

DECIDED OCTOBER 6, 1925.

Trover; from city court of Tifton—Judge Bennet. May 14, 1925.

*Ellis, Mitchell & Ellis,* for plaintiffs.

*Bennet & Branch, R. D. Smith,* for defendant.

LUKE, J. On November 11, 1922,. J. B. Harris delivered to the Atlantic Coast Line Railroad Company at Kirkland, Georgia, a bale of cotton consigned to J. N. Mitchell & Company at Tifton, Georgia. The draft attached to the bill of lading was paid by the consignee, and upon presentation of said bill of lading to the defendant's agent at Tifton, and the payment of the freight due on the shipment, the agent gave to the consignee an order for the cotton on the Tifton Compress, which was the agent of the railroad company for compressing cotton. The compress company gave to J. N. Mitchell & Company a "due bill for railroad orders only, and not for cotton." In December, 1922, plaintiff's agent took this "due bill" to the compress company and demanded the cotton. The agent of that company said the cotton had never been delivered to it, and that it did not have the cotton. Plaintiff's agent then went to the agent of the railroad company and called for the cotton, stating that the compress company had never had it. Mr. Windham, plaintiff's agent, testified as follows: "Mr. Alfriend (defendant's agent) advised me to wait until he could make a search for the cotton, and he would see if he could not find the same and make delivery. I went with him to the local warehouses and the warehouse of the Tifton Cotton Mills. This search covered a period of several months, and he did not find the cotton. Mr.

Alfriend stated to me, when I made this first demand, not to take any steps, but to allow him time to find the cotton, if possible; and, relying upon that, hoping that he would find the same, I did not file the claim; but after numerous demands I did file the claim at the instance of Mr. Alfriend. I would call occasionally perhaps once a month, and each time Mr. Alfriend would request me not to be uneasy, or to file a suit; that he thought he could get a settlement with the railroad company for the loss of this cotton and failing to have it delivered, or to have the same paid for. We instructed our attorneys in February, 1925, to bring suit. Claim for the cotton was filed in January, 1924. We never did receive the cotton, nor did we direct any one else to receive the same for us." Mr. Alfriend, defendant's only witness, testified substantially as follows: "I am L. S. Alfriend, agent at Tifton, Georgia, of the Atlantic Coast Line Railroad Company. . . This cotton arrived at Tifton on November 14. In December Mr. Windham advised me that the compress did not have the cotton, and requested its delivery. I stated to him that perhaps we could find the same, and to wait and we would make a search. We did go to the compress, searching their stock records, to the various cotton warehouses at Tifton, and to the Tifton Cotton Mills, and we did not find the cotton. It took sometime to make this search. I do not know what became of the cotton, unless some one stole it. I do not know that any one did steal it. I do know that the railroad company does not have the bale of cotton, nor did they have it at the time of demand. However, they might have had it, and I not have known it. We did not deliver the same to J. N. Mitchell & Company, nor have I any record of its delivery to anyone. I do not know what became of it after its arrival at Tifton. I asked Mr. Windham to wait before taking any steps for the recovery of this bale of cotton by filing of claim, until we could make a search of the compress, the Tifton Cotton Mills, and the local warehouses, and a claim was not filed until January, 1924. I then tried to get our claim agent to settle the same, and asked Mr. Windham not to bring any suit, that I thought we could get it settled." All the necessary documentary evidence having been introduced, both sides closed, and the court directed a verdict for defendant.

The foregoing statement of the evidence sufficiently indicates

the nature of the petition, with the exception that we deem it proper to set out the allegations as to conversion. They are substantially as follows: Demand was made for the cotton, and the. defendant company "has failed and refused to make delivery of the same, and has, on or about the 8th day of December, 1922, not only not delivered the said cotton to . . petitioners, but has the same and refuses to make delivery, or does not have the same and has converted the said bale of cotton to its own use and benefit in the county of Tift."

The defendant's answer denied the material allegations of the petition, except the reception of the cotton by it, and the delivery of the cotton to its Tifton office, and set up that it was not liable, (1) for the reason that the plaintiff had made no claim in writing within six months after the delivery of the cotton, or within six months after a reasonable time for delivery had elapsed; and. (2) because no suit was filed for the loss of the cotton within two years and one day after the delivery of the same, or within two years and one day after a reasonable time for delivery. The defendant further pleaded that the contract of carriage provided that it should be liable as at common law for any loss of said property or damage thereto, except as provided in said contract. The clause in the contract of carriage relied on by defendant is as follows: "Claims for loss, damage, or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property, . . or, in case of failure to make delivery, then within six months . . after a reasonable time for delivery has elapsed; provided that if such loss, damage, or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery. Suits for loss, damage, injury, or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed: provided, that in case the claim on which suit is based was made in writing within six months, . . suit shall be instituted not later than two years and one day after notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

Both title and right of possession were in the plaintiff, and, as we view the case, the controlling question is: Did the evidence demand a finding that there was no proof of a conversion? A demand by plaintiff and possession and refusal to deliver by defendant are alleged. If proved, this makes a prima facie case, which stands unless overcome by other evidence. Defendant's possession is admitted, and the presumption of law is that it continued. *Allen* v. *Brown,* 83 *Ga.* 161 (2) (9 S. E. 674) ; *Robson* v. *Rawlings,* 79 *Ga.* 354 (2) (7 S. E. 212). "The evidence of possession in defendant when the action was brought may be inferential, and need not be strong to prevent a nonsuit, the action being complaint in the nature of trover." *Securities Trust Co.* v. *Marshall,* 30 *Ga. App.* 398 (4) (118 S. E. 478), quoting *Robson* v. *Rawlings,* supra. A search failed to disclose the cotton, and there was no record of its having been delivered to any one. Defendant's agent surmised that the cotton had been stolen, but did not know this to be true. He was of the opinion that defendant was not in possession of the cotton, but also testified that defendant might have had it without his knowing it. He knew the cotton was not delivered to plaintiff. Under the evidence we think it was a jury question whether or not the defendant was in possession of the cotton when demand was made for it and when suit was filed. If the jury should find that a prima facie case was made by demand and refusal to deliver, it was still for the jury to say whether such case was overcome by the evidence. Again, the evidence being that defendant had the cotton, and there being no evidence to show what actually became of it, we think the jury had the right to say whether or not there had been an actual conversion of the cotton. "In a trover case, demand and refusal are necessary only as evidence of conversion, and need not be proved where conversion is otherwise shown." *Securities Trust Co.* v. *Marshall,* supra; *Merchants & Miners Transportation Co.* v. *Moore,* 124 *Ga.* 482 (2) (52 S. E. 802).

The case of *Southern Express Co.* v. *Sinclair,* 130 *Ga.* 372 (60 S. E. 849), which is strongly relied upon by defendant in error, is quite different in its facts from the case at bar. In that case the evidence "showed without conflict that the express company was not in possession of the property at the time the suit was brought or the demand made for its delivery." The consignee

could not be found, though search was made for him, and the trunk was destroyed by fire while in a proper place of deposit awaiting delivery to the consignee. There was positive proof that there was no conversion. Undoubtedly the case of *Shore* v. *Brown,* 19 *Ga. App.* 477 (5) (91 S. E. 909), cited by counsel for the defendant in error, states the law correctly as follows: "In trover conversion is the gist of the action. There must be some act of malfeasance, not mere nonfeasance, some positive wrong, and not the mere omission of what is right. Mere neglect of duty will not support an action of trover." We do not say that there was "mere neglect of duty," or that there was "some positive wrong." We do think, however, that the evidence was not such as to demand a finding that there was not a conversion,—in short, this was a jury question. Our opinion that the conclusion we have reached is correct is very much strengthened by the case of *Southern Railway Co.* v. *Morrison,* 8 *Ga. App.* 647 (3) (70 S. E. 91), the third headnote of which reads as follows: "If a person delivers a commodity to a railroad company for shipment from one county in this State to another, and the commodity is never shipped, and the evidence is such as to authorize the inference that the company or some of its agents made way with the commodity without shipping it from the point where it was delivered to the carrier, an action of trover and conversion may be maintained against the carrier in the county where the delivery to the carrier and the conversion took place."

2. It appears that the feature of the defense based upon failure to give timely written notice and failure to sue within the time specified in the bill of lading depends upon the question of conversion. In *Ayash* v. *Georgia Show-Case Co.,* 17 *Ga. App.* 467 (2 a) •(87 S. E. 689), it was said: "Any special terms or stipulations in the contract that might affect the rights of the parties if the suit had been brought to enforce the contract can not be considered in a trover suit." Again, in *Merchants & Miners Transportation Co.* v. *Moore,* it was said: "A suit in trover is not an action for loss or damage to property, but an action for conversion of property. The conversion on the part of the carrier is an abandonment by it of its contract of shipment. It can not repudiate this contract and then hold the shipper to its terms." We think also that under the facts of this case the jury should be allowed

to say whether or not the stipulations in the bill of lading as to notice and time of filing suit were waived by defendant's conduct. The court erred in directing a verdict for defendant.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*