## McKNIGHT *et al. v.* WILSON *et al.*

1. Refusal to direct a verdict is no cause for reversal.
2. Where counsel agreed that opposing counsel might introduce on the trial affidavits of witnesses that had been received at a previous interlocutory hearing of the case, and might use the evidence embraced in such affidavits without producing the affiants and having them sworn in person before the jury, it was error to permit counsel, over objection that it was improper and prejudicial, to argue to the jury that the opposing parties should have brought these witnesses into court, so that they could confront the jury and the jury could observe their manner upon the stand, and so that they could be subjected to cross-examination; and to make the statement (of which there was no proof) that counsel thus arguing had been trying to get the witnesses into court, but had not succeeded.
3. If a defendant did not reside in the county when suit was instituted against him and an entry was made of service upon him by leaving a copy at his most notorious place of abode, his failure to traverse this entry at the first term after he had notice of it did not preclude him from moving in equity to set aside the judgment rendered therein and to have its enforcement restrained.

No. 4176. APRIL 21, 1924.

Equitable petition. Before Judge Tarver. Whitfield superior court. December 15, 1923.

S. H. McKnight, a resident of Florida, on September 4, 1923, filed his petition returnable to the October term, 1923, of Whitfield superior court, against Wilson and the sheriff of Whitfield County, and made, this case: At the October term, 1922, of Whitfield superior court a judgment was rendered in favor of Wilson against petitioner, upon a petition which was filed on March 14, 1922. This petition purports to have been served on that day by the sheriff by leaving the same at the most notorious place of abode of petitioner. Petitioner traverses the truth of this return of service, and shows that the same is untrue, as he had no place of abode in Whitfield County, Georgia, at the time of the filing of said petition, nor at the time the same purports to have been served, petitioner's residence at that time being in Fulton County, Georgia. He was not served with the petition and process in said suit in any manner; he has never had his day in court; he had no notice of the pendency of the suit, nor did he waive service, nor did he appear or defend said suit, nor authorize any one else to waive service, or appear in said case. He had no knowledge of the entry of service made by the sheriff until he was so advised by one Brown in a letter on August 25, 1923. This is first term of this court after his knowledge of said entry of service. He prays that the sheriff and Wilson be enjoined from undertaking in any manner to collect said judgment, and that said judgment be set aside and declared void. In their answers to this petition the defendants alleged that McKnight was a bona fide resident of said county at the time he was served with said petition and suit in which said judgment was obtained, that he had full knowledge and notice of the pendency of the suit on which said judgment was rendered, and that said judgment was valid and of full force.

Davis, as executor of S. J. McKnight, filed his intervention, alleging that on January 5, 1923, he was served with a summons of garnishment based upon said judgment, returnable to Whitfield superior court, requiring him to make answer what property, money, or effects he had in his hands belonging to S. H. McKnight; that he answered said summons, admitting that he had in his hands as such executor, at the time of the service of said summons, the share of said S. H. McKnight in the estate of S. J. McKnight, amounting to $320, and upon this answer judgment was rendered

in favor of Wilson against him as such executor; that if the judgment of Wilson against S. H. McKnight was held to be null and void, then the judgment against him as such executor in the garnishment proceeding is necessarily null and void, and should be set aside. He prayed to be made a party in this cause; and he was by an order made a party.

By agreement between the parties this case was tried at the first term; and it was further agreed between them that either side might use the affidavits which were used on the interlocutory hearing, if they desired to do so, without producing the witnesses in person, but with the right to produce witnesses in person if they so desired. On the trial the plaintiff introduced the following evidence: The original petition positively verified. Affidavit of the plaintiff, in which he deposed that he formerly resided at Dalton, Whitfield County, Georgia, at 57 South Thornton Avenue, which was burned on November 25, 1921, when he moved with his family to the residence of Miss Carrie Green in said city, where he resided three months. On February 27, 1922, he removed from Dalton to Fulton County, Georgia, where he took up his residence and abode permanently. When he went to Atlanta his wife and family accompanied him, and he never returned to Whitfield County, Georgia. He resided in Atlanta for a period of six months, and then moved to Tampa, Florida, where he has ever since resided. He was not a resident of Whitfield County, Georgia on March 14, 1922, but was then a resident of Fulton County, Georgia. He was never served with the petition and process in the case of W. O. Wilson against him, in which judgment was entered against him at the October term, 1922, of Whitfield superior court. He did not appear and plead in said case, nor did he waive service or authorize any one else to appear and waive service for him. He had no place of abode in Dalton, Whitfield County, Georgia, at the time service purports to have been made upon him, and he had no knowledge of the pendency of the suit or judgment entered against him, until he was so advised on or about August 26, 1923, by C. B. Brown in a letter. He wrote to the attorney for Wilson, asking what the amount of this claim was, but he did not know that there was any suit pending, and said attorney did not inform him of any suit. He received a letter from the attorney of Wilson on or about March 22, 1923, which he did not preserve

and which is lost or destroyed (the contents of which are herein-
after set out in the evidence for defendants). On January 8,
1923, he received a letter from E. P. Davis, which he did not pre-
serve, but the substance of which was as follows: "I have just
been served this p. m. with garnishment by W. M. Sapp, attorney
for W. O. Wilson. I am rushing this letter to get it in this p. m.'s
mail; will write you more in few days." On January 14, 1923,
he received the following letter from Davis: "I wrote you sev-
eral days ago about the garnishment of W. O. Wilson. I am in-
formed that this is for something over $200. · A number of peo-
ple have asked me about your matters, and it looked like more
garnishments would be run. Our people in the bank thought it
best to attach the property also, as it looked as if it was all going
to be scattered out to others by attachment. I think it might be
wise for you to come up here after a little bit." On or about
August 25, 1923, he received a letter from C. B. Brown, which
has been lost or destroyed, the substance of which was as follows:
"I was in Dalton few days ago seeing about the garnishment busi-
ness. I had Dee and Frank McCutchen look into this for me;
they told me that there is a judgment against you in favor of
W. O. Wilson, gotten at October term, 1922; will let you know
more when I hear from them." While living in Atlanta he made
several trips to Dalton, the first being about March 20, 1922,
when he saw W. M. Sapp in the post-office. He spoke to him
and passed some remarks as to how Atlanta was. The second trip
was about July 15, 1922, when he met Sapp in the office of W. E.
Mann, where he and W. G. Mann took his interrogatories in the
case he had against the Southern Railway. Sapp did not say
one word about the Wilson claim. His third trip was about
August 12, 1922, when he was there staying at the Britton House,
and he did not hear one word about any suit pending against him.
His fourth and last trip was on the mission to bury his mother,
November 11, 1922. He saw Sapp then. Sapp, H. B. Farrar,
J. P. McKnight, and he rode to the cemetery in Farrar's car.
Did not see Sapp any more after the funeral. On or about August
25, 1923, was the first time he had any information that there was
a judgment against him in Whitfield County. He had no knowl-
edge of the entry of service made by the sheriff in the case of
Wilson against him, to the effect that he was served with a peti-

tion and process in said case by leaving a copy at his most notorious place of abode, until about August 25, 1923, after Brown had written him; and he had the facts investigated by McCutchen and was informed by him of the entry of service.

C. B. Brown deposed that notice of the suit of W. O. Wilson against S. H. McKnight was mailed to affiant by Goddard. He did not know S. H. McKnight's address; so he laid the same away and did not think any more about it. It was never delivered to S. H. McKnight that he knows of.

Plaintiff introduced a certified copy of the suit of W. O. Wilson against S. H. McKnight, with entries of verdict and judgment thereon. This suit was on a promissory note, dated Feb. 17, 1921, for $212, with interest and attorney's fees. It was alleged that on February 27, 1922, the plaintiff in that suit had served the defendant with a written notice that it was his intention to bring suit thereon at the April term, 1922, of Whitfield superior court, unless the note was paid on March 14, 1922. The process of this suit was dated March 15, 1922, returnable to Whitfield superior court on the first Monday in April, 1922. The entry of service by the sheriff, dated March 14, 1922, stated that he served the defendant by leaving copy at his most notorious place of abode. A verdict and judgment were rendered on October 2, 1922. Plaintiff introduced the garnishment affidavit and bond, sued out upon the above judgment on January 5, 1923. Summons of garnishment was served on E. P. Davis. Judgment was rendered against the garnishee on July 23, 1923.

L. C. Mitchell testified for the defendant: I moved some property for Mr. McKnight last year. He had me to haul a parcel of stuff up to the barn when he got burned out. Later on I hauled some stuff from Miss Carrie Green's to the barn. It was about the last of March or first of April. Have known Mr. McKnight several years. His home was on the avenue until he got burned out, then his home was with Miss Carrie Green, at Dalton, Georgia, until that time. Saw him several times after that until his mother was buried. I was staying at the stable, and he came back several times and I moved his things up to the stable. He stayed there practically all the time until he moved. Made the stable his headquarters. After his residence on Thornton Avenue burned, he and his family moved down in the house with Miss

Carrie Green. When he went to leave, I hauled some stuff for him and stored it in the barn. Part was put in the crib and part in the loft. Part was taken to the barn right after the fire, and he just took his best things to Miss Green's. He didn't move his family to the barn; and did not sleep there himself. He said he was going to move to Atlanta. He stayed here a little while after he moved his things. I don't know where he stayed at night. I stayed at the barn at night.

E. P. Davis testified: I am executor of the estate of S. J. McKnight. Immediately after the garnishment papers were served on me I communicated with S. H. McKnight. That was prior to the April term, 1923. I have known Mr. McKnight 25 years. During that time his residence has been in Dalton. I don't know where his residence was in March, 1922. He was in Tampa, Fla., when I wrote him. The summons of garnishment was served on me in January, 1923. McKnight lived for a while on Thornton Avenue. That residence was burned. I think he moved to Miss Carrie Green's; don't know how long he resided there. I don't know what day he left there and went to Atlanta. He came back here a number of times after he left Miss Green's. I didn't think he had left here. He was in and out of the bank constantly about collections and things of that kind. I had an impression he lived here, but it was an impression only. I had no facts or lack of facts on which to base it. He is a depositor in my bank. He was there frequently. I notified him of the summons of garnishment, by the letter heretofore quoted.

The sheriff of Whitfield County testified: I made the original entry of service on the petition in the case of W. O. Wilson against S. H. McKnight. Served this paper by leaving it at his place of business, his stable. Saw him there several times after that. Saw some furniture there at the time I left it at the stable. I thought Mr. McKnight was a resident of Whitfield County at the time I left the paper. I understood he was in Atlanta at the time, but would be back soon. Otherwise I would have made my return and sent it to Fulton County to be served. His family resided on Thornton Avenue. That residence had burned before this service was made; which is why I served it at his place of business. I left it at the stable in care of Mr. Goddard.

Defendant introduced a post-card from S. H., McKnight to

W. M. Sapp, postmarked Tampa, Fla., dated March 22, 1923, as follows: "Let me know amount including interest of W. O. Wilson note. 3/22/23." Also, a copy of a letter from W. M. Sapp, Dalton, Ga., to S. H. McKnight, Tampa, Fla., dated March 24, 1923, as follows: "Complying with your card of recent date, requesting the amount in the Wilson matter, will state that they are as follows: Prin. $212.00; Int. to 3/17/23, $35.40; Atty's. fees, $23.95; Court costs, $19.10; Total, $290.45. An order to E. P. Davis for this amount on or before April 2nd, when court meets, will save a slight additional costs in this matter."

A verdict was rendered in favor of the defendants. The plaintiffs moved for a new trial, which was denied, and they excepted:

*F. K. McCutchen,* for plaintiffs.

*W. M. Sapp* and *W. C. Martin,* for defendants.

HINES, J. 1. At the conclusion of the evidence the plaintiffs moved that the court direct a verdict in their favor, which the court refused to do. To this ruling the plaintiffs filed their exceptions pendente lite, and they assign error upon the ruling. The refusal of the court to direct a verdict is not error requiring a reversal in any case, even though such verdict could have been properly directed in favor of the complaining party. *Easterling* v. *Cowart,* 149 *Ga.* 161 (99 S. E. 301); *Reed Oil Co.* v. *Smith,* 154 *Ga.* 183, 185 (114 S. E. 56).

2. By agreement between counsel for both parties it was stipulated that either of the parties could, upon the trial of this case, introduce the affidavits of all witnesses which had been used upon the preliminary hearing for an injunction, and use the testimony of such witnesses embraced therein, without producing the witnesses and having them sworn in person before the jury. In pursuance of this agreement the plaintiffs introduced the affidavits of the plaintiff, S. H. McKnight, who was a resident of Florida, and C. B. Brown. In his argument before the jury, counsel for the defendants, in commenting upon the testimony of these witnesses, stated that the plaintiffs should have brought these witnesses into court, so that they could confront the jury and the jury could observe their manner upon the stand, and the defendant subject them to cross-examination. The plaintiffs objected to this argument, upon the ground that it was improper and prejudicial, and that counsel had no right to make such an argument after he

had entered into an agreement to try the case at the first term upon the affidavits introduced at the interlocutory hearing. The court refused to stop counsel from so arguing, and failed to reprimand him, the judge stating that he would not limit or control counsel's argument. Counsel for the defendants proceeded to argue in this strain, stating to the jury that the plaintiffs should have brought the witnesses into court, that he had been trying to get the witnesses into court, but had not been successful in so doing, and that the plaintiffs failed to bring them into court. To the court's refusal to reprimand counsel, and to limit his argument to the proved facts and circumstances, the plaintiffs excepted upon the ground that it was erroneous to allow counsel to make such an argument, as it was prejudicial to their case, and was unauthorized by the law and the facts. After counsel for the defendants had agreed that the plaintiffs might, on the main trial of the case, introduce in evidence affidavits of witnesses which had been introduced in their behalf upon an interlocutory hearing, and use the evidence embraced in such affidavits before the jury upon such trial, without producing the witnesses and having them sworn in person before the jury, where such affidavits were in fact introduced upon the trial of the case in evidence before the jury, it was improper and prejudicial to the plaintiffs for counsel for the defendants, in his argument, to undertake to disparage the testimony of such witnesses upon the ground of their non-production, the jury's lack of opportunity to observe their manner on the stand, and his lack of opportunity to cross-examine them; his waiver of the presence of the witnesses being a waiver of these rights and advantages. Especially harmful and prejudicial was the remark of counsel for the defendants, that he had been endeavoring to get the witnesses into court, and had been unsuccessful, where there was no proof of this fact. Civil Code (1910), § 4957; *Hunter* v. *State,* 133 *Ga.* 79 (65 S. E. 154); *Butler* v. *State,* 142 *Ga.* 286 (82 S. E. 654); *Pelham* v. *Elliott,* 11 *Ga. App.* 621 (75 S. E. 1062).

3. The court charged the jury as follows: "If you find that he did not traverse the entry of the sheriff showing service upon him at his most notorious place of abode at the next term of superior court after he acquired knowledge of such service, then your verdict should be in favor of the defendant." Plaintiffs ex-

cepted to this instruction, on the grounds, (*a*) that it was contrary to law, the law not requiring a traverse to be filed until the first term after the defendant has acquired knowledge of the entry of service, and not after he had acquired knowledge of a void service; and (*b*) that the court failed to designate the service to which he referred, there being a service of summons of garnishment of which the plaintiff, McKnight, admitted having knowledge in January, 1923. That the last exception to this instruction is without merit, as this instruction plainly refers to the service of process in the suit in which judgment was rendered against McKnight. But we think this instruction was erroneous for the reason that the failure of the defendant to traverse the entry of service of this suit at the first term after he had notice thereof, if such were the fact, did not preclude him from having the judgment rendered in such suit set aside and its enforcement enjoined, if he did not reside in the county when the suit was instituted and service was sought to be made upon him. A belated traverse of an entry of service, where the court has jurisdiction of the person of the defendant, will preclude the defendant from showing such return to be false. In such a case the defendant will be concluded by the judgment. Civil Code (1910), § 5566; *Elder* v. *Cozart,* 59 *Ga.* 199(3); *Sanford* v. *Bates,* 99 *Ga.* 145 (25 S. E. 35). But such return is not evidence as to matters which are not properly the subject of the return. *Kimsey* v. *Macon L. Co.,* 136 *Ga.* 369 (71 S. E. 675). If the record shows a regular return of service by the officer, "such return will be conclusive until traversed according to law, unless it be made to appear that the court, with actual service, would have had no jurisdiction of the defendant or of the subject-matter." *Maund* v. *Keating,* 55 *Ga.* 396. The constitution of this State declares that all civil cases, with certain exceptions, "shall be tried in the county where the defendant resides." Civil Code (1910), § 6543. A judgment, founded upon a suit in a court which had no jurisdiction of the person of the defendant is void, unless the defendant waived jurisdiction or appeared and pleaded to the merits. Civil Code (1910), § 5964; *Bostwick* v. *Perkins,* 4 *Ga.* 47; *Preston* v. *Clark,* 9 *Ga.* 244; *Graham* v. *Hall,* 68 *Ga.* 354; *Mauck* v. *Rosser,* 126 *Ga.* 268 (55 S. E. 32). Illegality will not lie to attack the validity of such judgment, as that would be going behind the judgment.

11

*Mangham* v. *Reed,* 11 *Ga.* 137; *Hood* v. *Parker,* 63 *Ga.* 510; *Harbig* v. *Freund,* 69 *Ga.* 180; *Southern Ry. Co.* v. *Daniels,* 103 *Ga.* 541 (29 S. E. 761). But in such case the defendant can resort to a motion to set aside the judgment, or to a court of equity to have such judgment canceled. *Swinney* v. *Watkins,* 22 *Ga.* 570; *Jordan* v. *Callaway,* 138 *Ga.* 209 (75 S. E. 101). Applying the above rulings, this charge of the court was not properly adjusted to the facts of the case, and was erroneous.

As we grant a new trial, we do not pass upon the sufficiency of the evidence to support the verdict.

                    *Judgment reversed.    All the Justices concur.*