## GRIMMETT v. BARNWELL.

No. 11666.   JUNE 17, 1937.

Mallory C. Atkinson and Park & Strozier, for plaintiff.

Jones, Johnston, Russell & Sparks and Ed. L. Benton, for defendant.

JENKINS, Justice.   A petition was filed in the superior court, claiming damages on account of a personal tort. It was alleged that the defendant is a non-resident but owns described property in the county, that the plaintiff is financially unable to give the bond required by the attachment statutes, and that it is necessary that she have the aid of equity in the nature of an equitable attachment in order to obtain full, adequate, and complete relief. The petition prayed that the court order the sheriff to seize the property by a levy, as in the case of an attachment; that the plaintiff have a judgment against the defendant and against the prop-

erty, and have such other. and further relief as might be necessary; and that the defendant be enjoined from disposing of the property. There being no personal service, the defendant appeared specially, attacked the jurisdiction, and moved to dismiss the action. The court having sustained this attack, the only question presented is whether the superior court, acting as a *court of law* under express statutory authority or under common-law authority of force in this State, or acting as a *court of equity* under express statutory authority or under English chancery practice here of force, could, without personal service or express or implied consent of the defendant, grant any of the relief prayed.

■ While it is true, as a general rule, that the courts of this State have no extra-territorial jurisdiction either at law or in equity over citizens of foreign States, so as to conclude them by a judgment in personam, and such a judgment is void unless the defendant has expressly or impliedly waived such jurisdiction (*Gordy* v. *Levison,* 157 *Ga.* 670, 122 S. E. 234; *McKnight* v. *Wilson,* 158 *Ga.* 153, 161, 122 S. E. 702), yet it is also true that neither the Federal constitution, nor the constitution of the State, nor the rules of comity between the States, limit the sovereignty of a State so as to preclude it from conferring authority on its courts to seize the property of a non-resident, located within its jurisdiction, and apply such property to the payment of his debts by a judgment or decree in rem. *Edwards Mfg. Co.* v. *Hood,* 167 *Ga.* 144 (3) (145 S. E. 87); *Hood* v. *Hood,* 130 *Ga.* 610, 612 (61 S. E. 471, 19 L. R. A. (N. S.) 193, 14 Ann. Cas. 359); *Forrester* v. *Forrester,* 155 *Ga.* 722 (2), 727 (118 S. E. 373, 29 A. L. R. 1363); *Dearing* v. *Bank of Charleston,* 5 *Ga.* 497, 513 (48 Am. D. 300); *Adams* v. *Lamar,* 8 *Ga.* 83, 90; *Molyneux* v. *Seymour,* 30 *Ga.* 440 (76 Am. D. 662); Pennoyer *v.* Neff, 95 U. S. 714, 723 (24 L. ed. 565); Arndt *v.* Griggs, 134 U. S. 316 (10 Sup. Ct. 557, 33 L. ed. 918). Since it is the State, and not the courts created by the State, that is vested with such inherent power, the question is not what inherent authority the State has, but what authority it has conferred upon its courts. "It may be stated, as an incontrovertible legal proposition, that every power exercised by any court must be found in and derived from the law of the land, and also be exercised in the mode and manner that the law prescribes." *Gray* v. *McNeal,* 12 *Ga.* 424 (2). Accordingly, in

order for a *court of law* to summarily seize property located within this State, belonging to a non-resident debtor, and subject it to a judgment in rem, the court would have to act under authority of some statute or of some existing rule of the common law. In like manner, in order for a court of equity to thus seize and administer property of a non-resident debtor, it too must follow fundamental equitable principles conferring such authority, found either in a specific statute or in the established rules of equity recognized by the high court of chancery in England and continuing of force in this State. Thus we arrive at the conclusion, as expressed in *Edwards Mfg. Co.* v. *Hood,* supra, that the courts may administer the property in this State of a non-resident "in a proper case and under proper pleadings," that is to say, as and when they are authorized and empowered so to do. In an ordinary suit such as the one now before us, constructive service being insufficient to authorize the grant of either a judgment in personam or an injunction binding against a non-resident (Hart *v.* Sansom, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. ed. 101; 32 C. J. 373), the question is narrowed to a determination of whether a superior court, at law or in equity, is empowered to grant the relief in rem as prayed for.

Since the allegations and prayers of the petition sound in equity, it would be unnecessary to consider the validity of the proceeding as one at law, save for the settled rule, under the uniform-procedure act of 1887 (Code, § 37-901), permitting both legal and equitable rights and remedies to be adjusted in a single superior-court suit, with the result that a petition seeking ordinary relief in equity is not subject to general demurrer on the ground only that the plaintiff has a complete and adequate remedy at law. *Sullivan* v. *Ginsberg,* 180 *Ga.* 840, 847 (181 S. E. 163); *DeLacy* v. *Hurst,* 83 *Ga.* 223 (4-6) (9 S. E. 1052). If a petition sounding in equity sets forth a cause of action at law, it will not be dismissed for a lack of equity. If the suit is good as one at law, it is immaterial how it is labeled. But "the superior court has no more power or jurisdiction by the combination of courts of law and equity than those two courts had before" the uniform-procedure act. *Broomhead* v. *Grant,* 83 *Ga.* 451 (10 S. E. 116). Where a plaintiff alleges and proves such facts as entitle him to equitable relief, the court will enforce his equitable rights; but where, although he asks equitable relief, yet he alleges and proves only such

facts as entitle him to strict legal rights, the court will enforce his legal rights, but only according to the strict rules of law. *Berrie* v. *Smith,* 97 *Ga.* 782, 786 (25 S. E. 757). Such a case will be dealt with and controlled by the same legal principles which would have been applied had it been instituted as a suit at law. *Bentley* v. *Crummey,* 119 *Ga.* 911 (2) (47 S. E. 209). For these reasons the authority of the court as one *at law* will be first considered and determined.

The recent act approved March 30, 1937 (Ga. L. 1937, p. 732), which in effect authorizes judgments in personam against non-residents who use the highways of this State with their automobiles and injure persons while engaged in such operation, and which provides a method for personal service of summons on such users of the highways by service on the Secretary of State as their attorney in fact, and otherwise as stated in the act, is in no wise pertinent to this case or any question here involved. The only statutory authority vested in the courts of law of this State to seize and subject the property of a non-resident debtor to a judgment *in rem* is contained in the attachment law. The Code, § 8-111, requires the plaintiff in attachment to give a specified bond. This is jurisdictional, and its absence renders the proceeding fatally defective. *English* v. *Reed,* 97 *Ga.* 477 (25 S. E. 325); *Rogers* v. *Birdsall Co.,* 72 *Ga.* 133. The instant case, therefore, considered as one *at law* under *express attachment statutes,* wholly fails; and as a proceeding *at law without a bond* against the property of the defendant it must fail, unless there exists some legal right under the principles of common law of present force in this State, which would authorize a legal procedure in rem without a bond.

The common and statute law of England, of force in this State on May 14, 1776, remains of force, so far as it is not incompatible with the Federal or the State constitution or has not been modified by statute. Code, § 2-8503; Act 1784, Cobb 721, Prince's Dig. 570; *Alexander* v. *Dean,* 157 *Ga.* 280, 283 (121 S. E. 238); *Harris* v. *Powers,* 129 *Ga.* 74 (2) (58 S. E. 1038, 12 Ann. Cas. 475); *Tucker* v. *Adams,* 14 *Ga.* 548, 569, 570; *Turner* v. *Thompson,* 58 *Ga.* 268, 271 (24 Am. R. 497). At common law, what right of judicial seizure existed to subject property to a debt or liability? The writ of attachment, as we know it, was "unknown to the com-

mon law." *Mills* v. *Findlay,* 14 *Ga.* 230, 232 (3) ; *Clark* v. *Tuggle,* 18 *Ga.* 604; Pennoyar *v.* Kelsey, 150 N. Y. 77, 79 (44 N. E. 788, 34 L. R. A. 248). As our court has said, "At common law, all service had to be personal." *Stuart Lumber Co.* v. *Perry,* 117 *Ga.* 888, 889 (45 S. E. 251) ; *Water Lot Co.* v. *Bank of Brunswick,* 30 *Ga.* 685, 686. Manifestly this was the rule as to all ordinary demands ex contractu or ex delicto; and the procedure against property under the ancient remedies of detinue, replevin, distress, and like writs, throws no light upon a case such as this. Except in such peculiar proceedings in rem, there appears to have been no legal writ or process at common law whereby the sheriff was permitted to seize and sell property of a debtor for the purpose of satisfying the liability claimed, other than the writ of fieri facias. To obtain such a writ, a judgment was first required. At common law, the term "attachment" was used in an entirely different sense from what we now understand it. If a defendant, after being personally served, disobeyed the original writ or summons, the next notice was called an "attachment," which was grounded on his non-appearance as required by the original writ. Upon such a failure to appear, the sheriff was commanded to "attach" him by taking gage, that is, by seizing certain of his goods, which he would forfeit if he did not appear, or by making him find securities, who would be amerced if he continued his non-appearance. If after such an "attachment," he still neglected to appear, he not only would forfeit this security, but was compellable by a writ of distringas infinite. Browne's Blackstone's Commentaries, 483, 485, 486. But this ancient and peculiarly limited method of seizure by so-called "attachment" to enforce the appearance of a defendant when he failed to obey the summons has never been of force in this State. Our "judiciary act of 1799" (Cobb, 471) made no provision for a preliminary seizure of property. The law providing for our present procedure by attachment upon the filing of affidavit and bond was enacted in 1799. Cobb, 69, 70. Except under such attachment procedure, the appearance of a defendant in an ordinary suit at law has always been obtained by the method now of force. See *Little* v. *Ingram,* 16 *Ga.* 194; *Bank of St. Marys* v. *Mumford,* 6 *Ga.* 44, 50. We have thus reached the conclusion that the present petition for relief *in rem* fails as a case at law under the attachment stat-

utes, because of the fatal absence of a bond, and fails as a case at law under the rules of the common law, because of the absence of any authority for a preliminary seizure of a defendant's property to subject it to an ordinary debt or liability; and that jurisdiction, if any, to grant the relief prayed must depend upon equity powers.

■ We turn then to the question as to what equity jurisdiction, if any, the courts of this State have in an ordinary action on a contract or in tort to seize and sell the property of a non-resident, under the statutes of this State governing equity procedure or under the rules of the English high court of chancery so far as of force. Does the mere presence of property belonging to a non-resident, within the territorial power of the court, give to a court of equity the right to intervene, irrespective of the non-existence of any other principle that confers equity jurisdiction? The Code declares: "Generally, equity jurisdiction embraces the same matters of jurisdiction and modes of remedy as were allowed and practiced in England." § 37-124. Most of the specific grounds of such jurisdiction, as recognized and established by the English high court of chancery, are codified in title 37 of the Code. In the practice of that court, one of the oldest, most fundamental maxims was that equity acts in personam upon defendants, and not in rem. Bispham's Principles of Equity (9th ed.), 78, § 47. The mere fact that property lay within the court's territorial power did not constitute or create an equitable ground such as would confer jurisdiction upon a court of chancery to administer it. In England as well as in most of the States, the rule that equity acts upon the person of the defendant is held to prevail, in the absence of statutory modification; so that it remains the general rule that jurisdiction in rem or quasi in rem, in equity, just as at law, is the creature of statutes, which are to be strictly construed. In the absence of such statutes, the general rule prevails that equitable "jurisdiction is not to be assumed and exercised [merely] upon the . . ground that the subject-matter of the suit is within the power of the court, or that the party is a non-resident." 1 Pomeroy's Equity Jurisprudence (4th ed.), §§ 134, 135, 170, 171, 428, 429; 4 Id. §§ 1316, 1318, 1433-1439; 6 C. J. 93, § 130; 15 C. J. 1391; 21 C. J. 149-152, 194, 195; 20 R. C. L. 565, § 353; and citations in those texts. Our own statutes create no general ground of equity jurisdiction, which empowers a court of equity

either to assume equitable jurisdiction over a case, or to seize property within its territorial control, merely because it is owned by a non-resident defendant. If the subject-matter of a suit concerns the title or disposition of the property, and not merely an ex contractu or ex delicto liability, or if the proceeding is for any other reason inherently equitable by reason of some established equitable ground, a court of equity would have jurisdiction to determine the controversy by applying the appropriate equitable principles and procedure. In such cases, our statutes provide for service on the defendant by publication. In those cases, involving recognized equitable principles, against non-resident defendants, jurisdiction in rem is exercised over their property located in the State, even though the defendants themselves can not be subjected to a decree or judgment in personam. See Code, §§ 81-204 to 81-207, as to service on non-residents in equity cases. These statutes, however, do not purport in themselves to create any new ground of equity jurisdiction. They merely provide a method of service on non-residents in cases where recognized equitable principles are involved.

Having thus arrived at the conclusion that the mere fact that the property of a non-resident defendant may be located in this State does not authorize a court of law to seize and administer it, save by following the statutory rules governing attachments, and having reached the further conclusion that the mere presence in this State of property belonging to a non-resident does not in and of itself constitute an equitable principle which will authorize a court of equity to seize and administer it to satisfy the ordinary claim of a creditor ex contractu or ex delicto, and since it is conceded that no attempt has been made to comply with the attachment statutes, we come now to consider whether, under the Code and our decisions, there be any *other* facts set forth in the petition, such as would authorize the invoking of equitable principles and give jurisdiction to a court of equity. In the first place, does a right to proceed in equity exist by virtue of the fact that for some good and legal reason the remedy established by law is unavailable or inadequate? If such be the case, this in and of itself would constitute a ground for equitable intervention. Code, §§ 37-102, 37-120. The petition alleges a personal tort consisting of a slanderous verbal assault upon the plaintiff by an alleged agent

of the defendant. In addition to the averment of non-residence of the defendant and the situs of the described real estate of the defendant within the territorial jurisdiction of the court, it is stated that the plaintiff is financially unable to give bond as required in cases of attachment; that "it is necessary that she have the aid of equity in the form or nature of an equitable attachment for full, adequate, and complete relief;" that unless the described real estate is seized by the court, the plaintiff's claim for her injuries will be defeated; and that unless the defendant is enjoined from selling, incumbering, or changing the status of the property, he will so handle and manage the same as to defeat the plaintiff's claim. The petition prays that the court order the sheriff to seize the property by levying on the same as in case of attachment; that the plaintiff have judgment for the damages claimed against the defendant and the property; that the defendant be enjoined from changing the status of the property; and that the plaintiff have such other and further relief as might be adequate and necessary. These are the only material averments and prayers.

It is well settled that if the averments of *fact* in a petition do not make a case in equity, mere prayers for equitable relief, or prayers not appropriate to the facts pleaded, will not do so. A mere prayer for general relief and the invoking of the powers of a court of equity to grant the same do not create an equity case. *Mulherin* v. *Neely,* 165 *Ga.* 113, 115 (139 S. E. 820) ; *Burress* v. *Montgomery,* 148 *Ga.* 548 (5) (97 S. E. 538). Even where equitable principles are actually involved, the statement of a bare conclusion that an injury is apprehended, without facts to show a good reason therefor, constitutes no ground for equitable relief. *Bailey* v. *Ross,* 68 *Ga.* 735 (b). Stripped of unsupported conclusions and prayers for the relief in personam, which is manifestly ungrantable in the absence of personal service, the petition seeks a summary seizure of and a judgment in rem against the real estate upon only two alleged grounds additional to that of non-residence and the situs of the property within the territorial control of the court: (1) because the plaintiff is financially unable to give the bond required by the attachment statutes; and (2) because it is asserted that the remedy at law by an attachment would not be adequate or as full and complete as the remedy in

equity. We consider in order these alleged equitable grounds. As already shown, the financial inability to give an attachment bond, since the Code, § 8-111, requires it, and its absence is jurisdictional, renders this proceeding, as one *at law,* fatally defective. As to whether such financial inability affords an equitable ground, the decisions of this court in cases where similar bonds are required by statutes are uniformly to the effect that mere financial inability to furnish the bond affords no lawful basis for equitable interference. Thus, where a summary proceeding under the Code is instituted by a landlord to evict his tenant, it has been repeatedly held that the tenant has "an adequate remedy under the Civil Code [§ 61-303] by filing" a counter-affidavit "and giving bond as provided by the statute;" and that "the mere fact that owing to the defendant's poverty he is unable to give the bond would not afford him ground to go into a court of equity and enjoin the plaintiff from pursuing his summary remedy." *Napier* v. *Varner,* 149 *Ga.* 585 (2) (101 S. E. 579); *Hull* v. *Holmes,* 42 *Ga.* 180; *Brown* v. *Watson,* 115 *Ga.* 592 (41 S. E. 998); *Johnson* v. *Thrower,* 117 *Ga.* 1007 (44 S. E. 846).

Since financial inability to give the bond required by the attachment statutes does not afford ground for equitable relief, we now look to see if the petition sets forth any other *fact or facts* which would authorize the conclusion pleaded that the remedy prescribed by law is in this particular case inadequate. Our Code, § 37-120, provides: "Equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided at law; but a mere privilege to a party to sue at law, or the existence of a common-law remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." It will readily be seen that if the law itself provides a full and adequate remedy, ordinarily that is the end of the matter, and equity will not interfere. 1 Pomeroy's Equity Jurisprudence (4th ed.), §§ 131-133; 1 Story's Equity Jurisprudence (14th ed.), § 117; Bispham's Principles of Equity (9th ed.), 28, 59; 21 C. J. 33-38, and cit. In this case it seems patent that the attachment law, if resorted to and complied with, would afford full relief and ample protection to the plaintiff. Even as against third parties acting in good faith and without notice, the levy of an attachment on real estate, where entry is made on the attachment docket as

provided by the statute, creates a lien instanter, and protects the plaintiff against subsequent liens and conveyances, without the necessity of an injunction to prevent disposal of the property. Code, §§ 8-905, 8-906. Since the act of 1799 (Cobb, 69, 70) the remedy by attachment, with an immediate seizure of the property on the filing of the case, has existed where a debtor is a non-resident with property in this State. Code, §§ 8-101 to 8-114, inclusive. That remedy now exists "in all cases of money demands, whether arising ex contractu or," as in this case, "ex delicto." Code, § 8-102; Acts 1857, p. 23. "Where, in obedience to a writ of attachment, the officer executing the same seizes certain property as the property of such a non-resident debtor, and so makes his return to the court, it acquires such jurisdiction as will enable it to proceed to judgment subjecting his interest in the property to the payment of the debt." *Earle* v. *Sayre,* 99 *Ga.* 617 (25 S. E. 943) ; *Harmon* v. *Wiggins,* 48 *Ga. App.* 469, 473 (172 S. E. 847). The attachment statutes also provide a similar right, whenever a debtor fraudulently sells, conveys, or conceals his property liable to the payment of his debts, or threatens so to do, or makes a fraudulent lien on his property. The procedure is similar to that in other attachments, with the additional burden on the creditor that a preliminary order from the judge must be obtained. Code, §§ 8-401 to 8-404, inclusive; Acts 1873, p. 29; Acts 1877, p. 20; *Rogers* v. *Birdsall Co.,* 72 *Ga.* 133; *Clay* v. *Tapp Co.,* 79 *Ga.* 596 (7 S. E. 256).

No receiver is asked in this case; and while it is true that a receiver can be appointed under a general prayer for equitable relief, provided the *facts alleged* authorize it (*Broderick* v. *Reid,* 164 *Ga.* 474 (2), 483, 139 S. E. 18; *Ætna Life Ins. Co.* v. *Dorman,* 179 *Ga.* 890, 177 S. E. 703), *no fact* is here set forth which would permit the appointment of a receiver. But even if the allegations and prayers were thus sufficient, and even if, as suggested, a receiver might impound the rents and profits of the property sought to be seized, so also would the legal process of garnishment accomplish the same purpose just as effectually. The Code, § 8-501, provides that, "in all cases where attachment may issue, it shall be the duty of the magistrate, or other officer issuing the same, *at the request* of the plaintiff, his agent, or attorney at law, to issue summons of garnishment," and "it shall be

the duty of the officer levying such attachment to serve such summons of garnishment." In *Branan* v. *Baxter*, 122 *Ga.* 222, 225 (50 S. E. 45), an attachment was available on the ground of non-residence, and, as the opinion stated, "no fraud" was "alleged." On this attempted proceeding in equity it was held that "the defendant corporation is a non-resident; and if there be assets in this State belonging to the defendant, the plaintiff had a full, complete, and adequate remedy at law by *attachment and garnishment.*" (Italics ours.) That decision by a full bench has never been overruled; and since it antedates anything which this court by a divided bench may have said to the contrary, it would appear to be controlling. There are also many other cases by a full bench, dealing with situations where a fraudulent-debtor attachment was available, but the creditor sought to proceed in equity, which are thought to have direct bearing on the case at bar. In *Haralson* v. *Newton*, 63 *Ga.* 163, this court held that "a pretended sale by a debtor, for the purpose of avoiding his creditors, does not render the interposition of a court of equity necessary," but that "attachment will lie" under the Code. In *Comer* v. *Coates*, 69 *Ga.* 491 (3), it was held that "for the fraudulent selling, conveying, or concealing of property by a debtor, or the creation of fraudulent liens with a view to avoid paying a particular creditor, the latter has a complete remedy by attachment." These rulings were followed in *Coates* v. *Allen*, 71 *Ga.* 787 (2), 790 (2). In *Stephens* v. *Whitehead*, 75 *Ga.* 294, it was decided that "the remedy of complainants, if any, was under the statute giving them an attachment," and "If the funds could be reached in equity, they could as well be reached by garnishment under attachment; and none of the circumstances which generally give a ground for resort to equity appear." These rulings were approved in *Haslett* v. *Rogers*, 107 *Ga.* 239, 243 (33 S. E. 44), where it was held that the fraudulent-debtor attachment statutes afford ample relief at law without the need of resorting to equity. In *Booth* v. *Mohr*, 122 *Ga.* 333, 337 (50 S. E. 173), the court held: "Since the uniform-procedure act, . . creditors may attack a sale made by their common debtor, as fraudulent, and obtain judgment against the debtor for their several demands," but "In such an action the plaintiffs would not be entitled to the extraordinary remedies of injunction and receiver, if it appeared that an attachment against

the fraudulent debtor would afford complete and adequate relief." It was said that in the case then under consideration, it would appear that the plaintiffs were amply protected by their legal remedy of attachment against the fraudulent debtor. In *Carstarphen Warehouse Co.* v. *Fried,* 124 *Ga.* 544, 546 (52 S. E. 598), it was said: "We think the plaintiff had a complete statutory remedy by attachment." While these decisions involved the availability and completeness of the remedy by attachment against fraudulent rather than non-resident debtors, there would seem to be no essential difference in the principles involved. As stated, the procedure as to affidavit and bond is identical, except that the burden on the creditor is greater as against a fraudulent debtor, in that the creditor must first obtain an order from the judge. Furthermore, the Code, § 37-701, declares: "In all cases of fraud (except fraud in the execution of a will), equity has concurrent jurisdiction with the law." Despite these differences, adding weight to the invoking of equitable jurisdiction against a fraudulent debtor, the decisions that the remedy at law by attachment was adequate and complete were rendered without a dissent. See also *Coker* v. *Taylor,* 169 *Ga.* 555 (150 S. E. 820).

We now consider other decisions by this court, supporting the view here taken, but by a divided bench. In *Tennessee Fertilizer Co.* v. *Hand,* 147 *Ga.* 588 (95 S. E. 81), four of the Justices concurring, it was held that "jurisdiction in a court of equity must first exist before it can exercise equitable powers;" that "jurisdiction must precede rather than follow receivership, injunction, etc.;" and that "where a minority stockholder in a domestic corporation brought suit on behalf of himself and others similarly situated, against a foreign corporation, alleging that it was the holder of a majority of the stock of the domestic corporation, and praying for a recovery of damages in favor of the domestic corporation on account of alleged fraudulent acts on the part of the foreign corporation in securing possession of the plant and assets of the domestic corporation, to the exclusion of the stockholders, under a lease of the plant and its assets for a period of five years on terms which were alleged to be enormously advantageous to the foreign corporation, and at a rental which was very small, and which resulted in enormous profits to the latter corporation, and where the prayer was for injunction, receiver, and the recovery as

damages of the profits alleged to have been fraudulently obtained, for the use of the stockholders of the domestic corporation, on the theory that the lease was fraudulent and void, and a judgment was also prayed against the foreign corporation, with a special lien against certain shares of the stock in the domestic corporation owned by the foreign corporation; and where the foreign corporation filed a special appearance in the nature of a plea to the jurisdiction, and also a demurrer, and a similar appearance was filed by the domestic corporation, it was error to strike the special appearances and pleas to the jurisdiction and to overrule the demurrers on the same ground." In the opinion it was said: "The venue of suits in this State, legal and equitable, is controlled by constitutional and statutory provisions. The mere fact that there is property belonging to a defendant within its territorial jurisdiction does not authorize a court of equity to seize it, the plaintiff having no lien thereon or present interest therein; and its seizure under such circumstances will not confer upon the court a jurisdiction it did not already possess. . . Of course, a court of equity could deal with the res where it had jurisdiction by reason of the provisions of section 5554 of the Civil Code [Code of 1933, § 81-205, relating to service on non-residents by publication], but the present case does not fall within any of the instances there enumerated." In a dissenting opinion by Justice Atkinson, in which Justice Gilbert concurred, it was said: "This is a suit by a minority stockholder in a domestic corporation against a non-resident who owns a majority of the stock and by virtue thereof dominates the corporation. The object of the suit was to recover for the corporation damages resulting from illegal management of the business of the corporation, in order that the damages recovered might be apportioned among all of the stockholders. The liability was not to the plaintiff personally; and the corporation would not sue, being unable to do so on account of the defendant's dominating control. Under the circumstances the plaintiff's only remedy was in equity. . . The plaintiff, not having a personal right to sue, could not proceed by attachment at law, under the Civil Code . . ; but having a right to redress the wrong, and there being property within the State which could be seized, equity would afford a remedy. . . To say that *for the purpose of collecting an ordinary debt owing to the plaintiff a*

*court of law, by the statutory remedy of attachment, could seize
the stock and apply it to the debt, but that where, as in this case,
the plaintiff though interested has no such direct relation as would
authorize him to institute an attachment proceeding at law,* equity
would not at his instance, through the instrumentality of a re-
ceiver, seize the property and apply it to the interest of all the
stockholders, would deny the broad and effective powers of equity."
From the portion of the dissent which we have here italicized, it
will be seen, that, upon the principle that if the plaintiff, in the
collection of an ordinary liability, could proceed by the statutory
remedy of attachment, that was his proper remedy, and that the
mere presence within the territorial jurisdiction of property be-
longing to a non-resident defendant would not give to the court a
right to exercise equitable jurisdiction to seize it, all of the Jus-
tices were unanimous in opinion. The gist of the dissent was
that under the facts the plaintiff, as only a minority stockholder,
was precluded from proceeding in the name of the corporation to
sue out such an attachment, and that, since under such peculiar
facts an attachment was not available, only an appeal to equity
could give relief through a seizure of the property of the non-
resident defendant. It was for this reason that the two dissent-
ing Justices thought that equity could be invoked. Both the
majority and the dissenting opinions support and in no wise
modify the rule as here stated. Thus, while we have referred to
the *Tennessee Fertilizer Co.* case as not being a full-bench deci-
sion, it clearly appears that upon the vital principle under discus-
sion all six of the Justices were in full and complete accord. See
also *Mull* v. *Akins,* 153 *Ga.* 92 (111 S. E. 650), where two Jus-
tices were absent and one Justice dissented.

As to the absence of equity jurisdiction in other cases where
statutory remedies are full and adequate, see *Field* v. *Jones,* 10 *Ga.*
229, 234, 235; *Williams* v. *Kennedy,* 134 *Ga.* 339, 341 (67 S. E.
821), and cit.; *Smith* v. *Murphey,* 140 *Ga.* 80 (78 S. E. 423);
*Daniel* v. *Joseph Rosenheim Shoe Co.,* 152 *Ga.* 278 (109 S. E.
504); *Cone* v. *Eubanks,* 167 *Ga.* 384 (145 S. E. 652); *American
Surety Co.* v. *Miller,* 173 *Ga.* 82, 83 (159 S. E. 692); *Douglas*
v. *Jenkins,* 146 *Ga.* 341, 343 (91 S. E. 49, Ann. Cas. 1918C,
322); *Williams* v. *Smith,* 148 *Ga.* 615 (97 S. E. 670); *Burress*

v. *Montgomery,* 148 *Ga.* 548 (supra); *Hope* v. *Glass,* 182 *Ga.* 514 (185 S. E. 803).

We turn now to a consideration of cases which might at first impression appear to support the plaintiff's contentions. In *Phillips* v. *Wesson,* 16 *Ga.* 137, there was a creditors' bill by several plaintiffs, "to subject assets which can not be reached at law [by garnishment], owing to the peculiar circumstances of the case," as stated. Two grounds of equity jurisdiction, as now codified, appeared: the avoidance of a multiplicity of suits, and a creditors' bill (Code, §§ 37-1501 [2], 37-301, 37-407, 37-408); and it was held that "a court of equity will be the most appropriate forum for distributing the fund amongst the claimants." In *Pope* v. *Solomons,* 36 *Ga.* 541, this court held that, "although a party may have a common-law remedy, yet, if it is not as complete and effectual as it would be in a court of equity, the latter court, having first taken jurisdiction of the cause, will retain it." It was "insisted that the complainant . . had an adequate remedy at law by garnishment." The bill was brought by one creditor against several defendants, and alleged that one, the debtor of the plaintiff, had absconded, leaving no property in the State; that his copartner, also a defendant, was insolvent; and that the absconding debtor had sold his interest in a stock of goods to a third person, in consideration of an agreement by the latter to pay a usurious debt to another creditor of the debtor, and charge the same against the amount due by the third person to the debtor as purchase-price. The bill prayed for discovery against the partner of the absconding debtor, and against the purchaser and the other creditor, and for an injunction against the purchaser's payment to the other creditor; and sought to reach the amount of the effects in the hands of the purchaser, after an accounting with regard to the usurious debt, so as to allow only lawful interest. Injunction was issued, and process served on all parties except the absconding insolvent debtor. From these facts it is obvious that the equitable ground of avoiding a multiplicity of suits was involved, with an additional averment as to the debtor's insolvency; and that the remedy of garnishment would not have been as complete and effectual as the recourse to equity to obtain full relief against all of the defendants. *Bowling* v. *Amis,* 58 *Ga.* 400, is also clearly distinguishable by the fact that the choses in action of

the alleged fraudulent debtor, sought to be reached in equity by the plaintiff creditor, consisted of promissory notes executed by a third person to the debtor's son, so as to render wholly ineffective the process of garnishment, directed to the maker of the notes and based upon a suit against the debtor. As Justice Bleckley said, for this reason, "it is only in equity, or upon equitable principles, that he is liable to the father, or rather to the father's creditors."

In *Ernest* v. *Merritt*, 107 *Ga.* 61, 64 (32 S. E. 898), "an equitable petition [was] brought by creditors of a husband against him and his wife, alleging a conspiracy by them to defeat his creditors by fraudulently placing in her the title to property belonging to him and justly subject to the payment of his debts, setting up divers and complicated transactions, including the making of various deeds by the husband to the wife, . . and praying that portions of the property described be decreed subject to the petitioners' claims." It was held that the petition "was not demurrable," and that "in such a case the remedy at law would not be adequate and complete." The adequacy of the legal remedy was not discussed other than by a mere reference to *Conley* v. *Buck*, 100 *Ga.* 187 (28 S. E. 97), as authority. In the *Conley* case many defendants were involved in the alleged fraudulent conspiracy with the debtor to "hide" and "cover up" his property in the names of the conspirators. The petition prayed not only for judgment subjecting all the property to the petitioner's execution, but for "*cancellation* of the various conveyances." This alone was a ground of equitable jurisdiction in cases of fraud. Code, § 37-709. There were also many defendants, with the consequent additional ground to avoid a multiplicity of suits. In the *Ernest* case, the petition was in effect a creditors' bill by several plaintiffs, avoiding a multiplicity of suits and involving complicated transactions. Code, §§ 37-701, 37-407, 37-408. The avoidance of multiplicity of suits as a ground also appeared in *Kruger* v. *Walker*, 111 *Ga.* 383 (36 S. E. 794). In the unanimous decision in *Coleman* v. *Law*, 170 *Ga.* 906, 911 (154 S. E. 445, 74 A. L. R. 864), this court sustained the invoking of equitable jurisdiction on the ground of a trust. Code, §§ 108-106, 108-117, Bispham's Principles of Equity (9th ed.), § 20. That decision, however, cited with approval four of the cases which we have dis-

cussed, as to the adequacy of the remedy at law where a fraudulent debtor attachment was available, and it was said by Justice Hines: "It is true that whenever the debtor shall threaten or prepare to sell, convey, or conceal his property liable for the payment of his debts, for the purpose of avoiding payment of the same, the creditor can sue out a fraudulent debtor's attachment. [Citing Code section.] *In cases covered by this section the creditor has a complete remedy at law by attachment."* (Italics ours.) The earlier cases referred to were then cited, and the peculiar and additional facts which made a different rule applicable in that case were stated: "In this case, however, the plaintiffs were seeking to have set up and declared an *implied trust, which is an equitable cause of action."* (Italics ours.)

Finally, we deal with the cases on which the plaintiff especially relies. It would seem that of these all but one are distinguishable and do not conflict with the rule here arrived at. First, there is a group of divorce and alimony decisions which hold that, while a judgment in personam for alimony can not be lawfully rendered in a divorce suit against a non-resident husband, a judgment merely in rem against specific property within the territorial jurisdiction of the court is proper. *Hood* v. *Hood, Forrester* v. *Forrester,* supra; *Donalson* v. *Bridges,* 162 *Ga.* 502 (134 S. E. 302); *Jackson* v. *Jackson,* 164 *Ga.* 115 (137 S. E. 827). Under our constitution and statutes, vesting in the superior courts jurisdiction over divorce and alimony cases, they stand upon a peculiar footing. As a necessary incident to the power to grant a divorce in a suit for divorce and alimony, the court is invested with the additional power to make provision as to alimony. *McGee* v. *McGee,* 10 *Ga.* 477, 483. The Code, §§ 30-105, 81-204 to 81-207, inclusive, provides for service on non-residents in divorce cases, "as in causes in equity," by publication. Under §§ 30-209 and 30-111, codifying the act of 1806 (Cobb, 224, 225; Acts 1866, pp. 146, 147), which was embodied in all subsequent Codes, "in all suits for divorce, the party applying shall render a schedule, on oath, of the property owned and possessed by the parties, . . distinguishing the separate estate of the wife, if there be any, which shall be filed with the petition, or pending the suit, under the order of the court;" and the jury rendering the final verdict in a divorce suit may provide permanent alimony for the wife,

either from the corpus of the estate or otherwise, according to the condition of the husband." Under the Code, § 30-118, "the verdicts of juries disposing of the property in divorce cases shall be carried into effect by the courts, by entering up such judgment or decree, or taking such other steps usual in courts of equity, as will effectually and fully execute the same." It is provided that unless the husband, under § 30-211, has made adequate provision for the wife, "*equity* may, by decree, compel [him] to make such provision." § 30-212. By § 30-213, embodying the act of 1870 (p. 413), the wife is permitted to proceed for alimony, if living in a bona fide state of separation, even when no action for divorce is pending; and it is further provided that the judge may grant "such order as he might grant were it based on a pending petition for divorce, to be enforced in the same manner, *together with any other remedy applicable in equity, such as appointing a receiver and the like.*" See *Yoemans* v. *Yoemans*, 77 *Ga.* 124 (2) (3 S. E. 354). See also *Wise* v. *Wise*, 156 *Ga.* 459 (2), 465 (119 S. E. 410), where the procedure, statutes, and decisions relating to alimony were fully discussed. It is thus manifest, that, whether the pleadings and procedure in divorce and alimony cases under the present statutes are to be deemed as partly at law and partly in equity (Code, § 30-214), or whether they are essentially equitable throughout, the statutes have invested the superior courts with full equitable powers in suits for divorce to protect the rights of the wife in the properties of the husband that lie within the territorial power of the court. Where the husband is a nonresident, served by publication, the court, having jurisdiction of the res of the marriage relation, may render a valid decree of divorce; and under its additional power given by the statutes, having incidental equity jurisdiction over the res of the property within its territory, it may render a valid judgment or decree in rem with respect to such property where necessary to enforce the wife's claim to permanent alimony. In the absence of personal service, or a waiver thereof, the court is merely precluded from entering a judgment or decree in personam respecting the alimony allowance. This distinction was recognized, not only in the alimony cases cited, but in *Williams* v. *Williams*, 94 *Ga.* 627 (2) (20 S. E. 108), where it was held that "the decree in the divorce suit can,

as a *judgment in rem,* operate only upon property embraced in the schedule or described in the decree itself." (Italics ours.)

Therefore it seems clear, even though the ruling in the *Hood* case, supra, that although a personal judgment for alimony was invalid a judgment in rem would have been proper, was obiter, that since the actual judgment was only one in personam, the ruling was correct. This peculiar status of decrees or orders in rem for alimony in pending suits for divorce is the main distinguishing point between such cases and the instant one. There are other differences. In the *Forrester* case, supra, it was said also that a demand for alimony can not be enforced by attachment and garnishment, and therefore the basis of the decision seems to have been that since the remedy by attachment was not available, "at law this plaintiff is remediless." In *Donalson* v. *Bridges,* supra, it not only appeared that the subject-matter of the suit was permanent alimony, but it was also sought to cancel a deed fraudulently procured from the husband while non compos mentis. Under this ground of equitable relief against several defendants, equity jurisdiction was also manifest. The *Jackson* case, supra, was also a suit, not only for alimony and a judgment in rem, but for the setting aside of a conveyance by the husband, and with two additional parties defendant. Two Justices dissenting on the ground that the relief as sought against the husband required personal service on him, the majority held that under the *Forrester* decision the petition was not subject to demurrer.

Other cases, where equitable jurisdiction was plainly involved, are also readily distinguishable. In *Edwards Mfg. Co.* v. *Hood,* 167 *Ga.* 144 (2) (supra), two Justices basing their dissent on *Tennessee Fertilizer Co.* v. *Hand,* 147 *Ga.* 588 (supra), the majority held that, if a non-resident "has property in the State that is subject to seizure for his obligations to a resident plaintiff, the courts will, *in a proper case and upon proper pleadings,* seize the property and administer it for the benefit of the plaintiff." (Italics ours.) That decision, however, does not run counter to the principles as heretofore stated and decided by this court in the cases discussed, where an attachment would have given an adequate and complete remedy at law; but merely holds in effect that "in a proper case" for equitable interference a non-resident's property can be seized and administered. Such a case there

existed, since, as was said, "equitable jurisdiction did not depend alone upon the fact of such non-residence," but "the main purpose of this suit is to enforce the obligations of the defendant to the plaintiff, arising out of the same contract between them" with respect "to the property which is the subject-matter of the contract, and which is within the jurisdiction of the court." That relief, in the nature of specific performance, has constituted one of the main grounds of equity jurisdiction both in England and now under our Code, §§ 37-801 to 37-807, inclusive: Bispham's Principles of Equity (9th ed.), § 361 et seq. *Walters* v. *Southern Brighton Mills,* 168 *Ga.* 15, 27 (147 S. E. 87), citing as authority some of the foregoing decisions, is also clearly differentiated from the case at bar by the fact that the plaintiff sought and obtained against a non-resident vendor a verdict and decree for *specific performance* of a contract for the sale of land in this State, a recognized equitable ground. In *Coral Gables Corporation* v. *Hamilton,* 168 *Ga.* 182 (147 S. E. 494), one Justice dissenting and another concurring only in the result, not only does it appear that an attachment at law had already been sued out by the plaintiff, so that the equitable petition, in lieu of a declaration in the attachment, was only of ancillary character, but that, in addition to this, there appeared particular grounds of equitable jurisdiction, in the alleged fraud and rescission of a contract. In *Reid* v. *Gordon,* 173 *Ga.* 168, 172, 173 (159 S. E. 708), two Justices dissenting, the court cited earlier cases, as above mentioned, sustaining equitable jurisdiction, and held that there "the remedy of the creditor by attachment [against the non-resident defendant] is not as full and complete as that afforded by equity." The opinion, however, shows distinguishing facts. The plaintiff not only sought a judgment in rem, but, as it was said, "he is also seeking to have certain conveyances of this property canceled and set aside, as fraudulent;" and "he is seeking to have an accounting from the main defendant for partnership funds used by him;" and "he is likewise seeking a decree dissolving the partnership between him and the main defendant." It was therefore held that "these rights can not be enforced by the legal remedy of attachment;" that "equity alone can give to the plaintiff full, adequate, and complete relief;" and that "for this reason the remedy of attachment is not sufficient." The Code expressly recognizes equity jurisdiction in partnership

cases of this nature, besides the equitable ground of cancellation for fraud. §§ 75-107, 75-201, 37-701, 37-709. There were three non-resident defendants, and the case also involved an avoidance of a multiplicity of suits.

We turn now to the case of *Pendley* v. *Tumlin,* 181 *Ga.* 808 (184 S. E. 283), on which the plaintiff especially relies. Under similar averments and prayers, that decision does not appear distinguishable from the instant case. One Justice dissenting, the majority holding, based upon the cases of *Forrester* v. *Forrester* and *Coral Gables Corporation* v. *Hamilton,* supra, supports the plaintiff's contentions. It was there held that an attachment against a non-resident does not afford an adequate remedy, and that, even though the liability claimed was for a personal tort, equity had jurisdiction to seize the defendant's property as in case of attachment. In the *Pendley* case reference was made to the rule that a receiver may be appointed in a proper case under a general prayer, even though not specifically prayed. This idea has already been discussed. Since the *Pendley* decision was not unanimous, the prior unanimous decisions, with which we have dealt, should control. Upon a review of the cases discussed on the questions presented, these earlier decisions are now held to be controlling, nothwithstanding anything that may have been subsequently held to the contrary. Accordingly, the decision in *Pendley* v. *Tumlin,* supra, will not be followed. As stated above, all other previous decisions are distinguished by their facts from the case under consideration. We deem the questions here involved to be of great importance. The establishment of a rule that averments of facts, merely setting up non-residence of a defendant and financial inability of a plaintiff to give an attachment bond, without showing any other such fact as would authorize the invoking of equitable principles, are sufficient to authorize a court of equity to seize and administer a non-resident's property, would result in a practical nullification of our attachment and garnishment laws requiring bonds for the protection of alleged debtors, and in the abrogation of the well-established rule that equity will not take jurisdiction where there is an adequate remedy at law. We have therefore reached the conclusion that, under the rules as expressed in the syllabus, the judge did not err in sustaining the plea to the jurisdiction and the motion to dismiss the action.

 *Affirmed.*

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*